Place v. Johnson.

---

JANE C. PLACE

*vs.*

ANN W. JOHNSON and JOSEPH S. JOHNSON.

The defendant, A. W. J., wife of the defendant, J. S. J., being the owner of a tract of land well known as the Johnson Homestead, enclosed by a fence and supposed to contain about twenty acres, although its precise contents had never been ascertained by actual survey, demised the same to the plaintiff at a monthly rent payable in advance, the lessee covenanting to surrender possession peaceably at the end of the term. In the

lease the premises were described as "a certain twenty acres of land * * * * known as the Johnson Homestead." The lease contained an agreement on the part of the lessor to convey "the premises described in this lease" to the plaintiff at a price named, at any time within five days, after the expiration of the term. Both before and after the making of the lease, the lessor and her husband verbally agreed to convey the Johnson Homestead to the plaintiff, upon the same terms as those contained in the written agreement. The plaintiff entered under the lease, and, after the expiration of the term, continued in possession, and in due season notified the defendant, J. S. J., that she would purchase the property at the price agreed upon, and requested a deed. Thereupon J. S. J., having caused a survey to be made, and having learned thereby that the tract contained nearly twenty-three acres, caused twenty acres to be surveyed off the east side of the tract, and a precise description of this twenty acres to be inserted in a conveyance, which the defendants executed and fraudulently imposed upon the plaintiff as a deed of the entire homestead. The plaintiff, ignorant of the fraud, and supposing the description in the deed to be a minute description of the entire tract, accepted the deed and paid the purchase money, according to the terms agreed upon. The defendant, J. S. J., acted throughout the whole transaction as the agent of his wife. *Held*, that the written agreement was void because of the non-joinder of the husband therein, (Laws 1869, chap. 56;) that the plaintiff's possession after the expiration of the term was a possession under the contract of purchase, and not under the lease, and was such a part performance of the parol contract as entitled her to a specific performance thereof; that the plaintiff's right to a specific performance was unaffected by her acceptance, through mistake, of the deed fraudulently imposed upon her by the defendants; that her mistake and the defendants' fraud were sufficient ground for a decree, either reforming the description in the deed so that it should include the residue of the land contracted for, or directing a conveyance of such residue.

The evidence in the case considered, and held sufficient to support the findings of fact.

Prior to the making of the lease, and while the plaintiff was negotiating with him for the purchase, the defendant, J. S. J., pointed out to her the boundary line and fence around the homestead, and stated that he thought there would turn out to be twenty-one acres, but that he would sell the place at the price named, without regard to the quantity of land. After she had applied for a deed, he furnished her with an abstract of title, in the caption of which the entire tract was described. *Held*, that evidence

of these acts and statements was properly admitted, as tending to prove both the agreement to sell the whole place, and the defendants' fraud.

The plaintiff brought this action in the district court for Hennepin county to obtain the reformation of a deed. The judge, before whom the case was tried without a jury, found the facts substantially as follows:

On the 29th November, 1870, and long prior thereto, the defendants were husband and wife. On that day the defendant Ann W. Johnson, by indenture of lease, demised to the plaintiff, for the term of five months from November 30, 1870, certain premises of which she was seized in fee, and which are thus described in the lease: " The following described premises with their appurtenances, situate, lying and being in the city of Minneapolis, county of Hennepin and state of Minnesota, and known and designated as follows, to-wit: A certain twenty acres of land, (including lake and marsh,) lying and being in Johnson's Addition to Minneapolis, and known as the Johnson Homestead, and until recently occupied by the said Johnson as a residence." The lease contained a covenant on the part of the plaintiff to pay rent monthly in advance, and to surrender the premises peaceably at the end of the term. Immediately after the foregoing description was the following agreement: " And it is hereby agreed by the said party of the first part, that at any time during five days after the expiration of this lease, she will accept from the party of the second part the sum of twelve thousand five hundred dollars, as per schedule of payments on the back of this lease, and will grant to the said party of the second part, in return therefor, a true warranty deed of the premises described in this lease." The premises in question were an entire piece of land, being part of Johnson's Addition, lying in one tract which had never been subdivided, and had been the place of residence of the

defendants who used it as a small farm, and was called and well known as the Johnson Homestead, and was generally understood and said to contain about twenty acres of land. The defendant, Joseph S. Johnson, did not join in or sign the lease and agreement, but the plaintiff went into possession of the demised premises under the lease with his assent and approval. The terms of the lease were in all things complied with by both parties. During the term, and between the 8th December, 1870, and May 1, 1871, the defendants had frequent interviews with the plaintiff concerning the premises, their character and extent, and concerning the proposed purchase, at which interviews the premises were referred to as "the homestead," and in some of them the boundary lines of the tract were pointed out and located upon the land. Before the execution of the lease the defendants had also proposed to sell the premises to the plaintiff. They were then uncertain as to the exact quantity of land in the tract, but supposed it contained about twenty acres, and proposed to sell the entire tract, more or less, to the plaintiff for the sum of twelve thousand five hundred dollars. During all this time the tract was enclosed in fence, and the plaintiff always understood that the lease and the privilege of purchase referred to and included the whole tract. In April, 1871, and before the expiration of the term, the plaintiff notified the defendant, Joseph S. Johnson, that she would purchase the property, and on the 3d of May applied to him for a deed. He, acting for both defendants, procured an abstract of title of the premises and a survey thereof from which the deed might be prepared. In the caption of the abstract the premises were described as "twenty acres, more or less, in the north part of southwest quarter, section 27, township 29, range 24, bounded on the east, south and west by Johnson's Addition, and on the north by the north line of said quarter section."

Place v. Johnson.

Having employed a surveyor to ascertain the quantity of land in this tract, known as the Johnson Homestead, and being informed by him that it contained twenty-two 84-100 acres, the defendant J. S. Johnson caused an accurate survey to be made by the surveyor, who surveyed the whole tract and divided the same, measuring off twenty acres thereof on the east side, and setting proper stakes to indicate the division. No notice of the proposed division was given to the plaintiff, nor had she any information of the survey, but on the contrary she always understood from the negotiations with the defendants, that the contract of purchase embraced the whole of the homestead. The defendants had never before had the tract surveyed, and were not aware, until consulting the surveyor, that it contained more than twenty acres. On the 8th May, 1871, the parties, pursuant to their negotiations, repaired to an attorney, for the purpose of having the deed and purchase money mortgage prepared and executed. The defendants produced to the attorney the abstract and the notes of the survey, from which to prepare the deed and mortgage, and thereupon the description furnished by defendants from the survey, comprising twenty acres only, was inserted in the deed and mortgage. The abstract contained no other description than that above stated. Neither the plaintiff, nor her attorney who prepared the deed, had any knowledge, or any reason to suspect, that the description so furnished was not an accurate description by metes and bounds, courses and distances, of the Johnson Homestead; and being misled by the acts and silence of the defendants, they received the deed and executed a mortgage for a part of the purchase money, and made the cash payment required by the agreement, in the full belief that the plaintiff had received a deed and given a mortgage of the whole tract. After the record of the deed and mortgage, the plaintiff discovered her mistake, and re-

quested the defendants to correct the same, which they refused to do. No deed of the residue was tendered the defendants for execution, but the plaintiff brought into court a quit-claim deed for the defendants to execute, and also prepared and executed, and produced in court a mortgage of the same premises, for the use of the defendants upon the execution of the deed, or as the court should direct. The court further found that on the expiration of the lease, and upon her notice to the defendants that she would purchase the premises, pursuant to the agreement contained in the lease, the plaintiff "continued in possession of the entire homestead tract, with the full approbation, consent and understanding of the defendants, as being under and in pursuance of the said terms of purchase, and has since so continued in possession, and the said purchase, in completion of said contract, was consummated with the full understanding by said plaintiff, that the description in said deed so received was co-extensive with her said possession."

Judgment was ordered for the plaintiff, directing a reformation of the deed and mortgage. This appeal is taken from an order refusing a new trial.

All other matters necessary to a full understanding of the case are stated in the opinion.

COOLEY & LOWRY for Appellants.

LOCHREN, McNAIR & GILFILLAN for Respondent.

*By the Court.*—RIPLEY, CH. J.—For want of Johnson's signature thereto, there is in this case, by force of the statute, *Laws* 1869, *ch.* 56, § 2, no valid contract in writing of Mrs. Johnson's for the sale of the "certain twenty (20) acres of land, (including lake and marsh,) lying and being in Johnson's

Place v. Johnson.

Addition to Minneapolis, and known as the Johnson Homestead, and, until recently, occupied by said Johnson as a residence," which Mrs. Johnson leased to the plaintiff, and in the lease agreed " that at any time during five days after the expiration of this lease, she will accept from the party of the second part the sum of twelve thousand five hundred dollars, ($12,500,) as per schedule of payments on back of this lease, and will grant to said party of the second part in return therefor, a true warranty deed of the premises described in this lease." It is the statute, and that only, which invalidates this written agreement. *Palmer vs. Scott*, 1 *Russell & Mylne*, 394.

The facts, however, support the conclusion of the district court, that both defendants " have ratified and adopted the said written agreement, and assumed to execute a deed in fulfilment thereof." Nor was there ever any uncertainty in the minds of either plaintiff or defendants as to the subject-matter of the agreement between them. It is certain that Johnson knew what the plaintiff meant when she told him she would " take the place." There was a complete mutual understanding between the parties, the one to buy, the other to sell, the same thing and on the same terms. The fact found by the district court, that the parties " did, on the 8th day of May, 1871, repair to an attorney, for the purpose of having the deed and mortgage made and executed, in accordance with the stipulations in said lease as described in the complaint," is, of itself, conclusive on this point.

Whether the defendants had then conceived the design of putting the plaintiff off with less than the whole of the " Johnson Homestead," it is unnecessary to inquire. The stipulations in the lease were for a deed of the Johnson Homestead, and the parties went to the attorney for the purpose of

executing a deed and mortgage thereof. This necessarily implies a mutual understanding on the point.

By the description in the lease, the premises known as the " Johnson Homestead," and until recently occupied by defendants as a residence, would pass, whether said premises contained more than twenty acres or less. Consequently, under the mutual understanding aforesaid, the plaintiff was entitled to the said premises for twelve thousand five hundred dollars. But this agreement, not being reduced to writing, would be of no avail if defendants did not see fit to stand to it, unless there had been such a part-performance thereof as that a court of equity would decree it to be specifically performed. *Gen. Stat. chap.* 41, *title* 2.

Plaintiff went into possession under and by virtue of the lease, and, in general, where one is in actual possession of land as tenant with a verbal agreement for purchasing, mere continuance in possession is not part-performance. *Lincoln vs. Wright*, 4 *DeG. & J.* 16 ; *Sugden on Vendors, by Perkins, p.* 152. The leading case on this subject states the reason, in Lord Loughborough's remark, that a tenant " of course continues in possession unless there is a notice to quit," and therefore such continuance is presumptively referrible to the lease. *Wills vs. Stradling*, 3 *Ves. jr.* 378.

It would seem singular, however, to say that this plaintiff would of course continue in possession unless there was notice to quit, for she covenants to quit at the end of the term, and stipulates that, if she does not, defendant may re-enter and remove her without notice.

The district court finds, as a conclusion of law from the facts found, that plaintiff's possession after the expiration of the lease was not that of a tenant holding over, but, in accordance with the intention and understanding of the parties, was held under the agreement to sell and convey to her, and on

Place v. Johnson.

the expectation that the purchase would be complete. The question is, whether the facts found warrant this conclusion

It is laid down in Browne on the Statute of Frauds (4th Ed.) § 475, and the authorities in our opinion bear out the statement, that the rule, which controls all cases where possession is relied on, is that merely taking or holding possession is, of itself, nothing. The question is, *quo animo* is it taken and held, and this is not allowed to be answered by parol proof of the agreement between the parties. But where a tenant continues in possession under an alleged agreement for a new tenancy, (and an agreement for a purchase stands on the same footing,) it is answered by proof of any act on his part, done with the privity of the owner of the fee, which is inconsistent with the previous holding, and is such as clearly indicates a change in the relation of the parties.

The court finds that in April, 1871, and before the expiration of the lease by its term, the plaintiff notified the defendant, Joseph S. Johnson, that she would purchase said property, and on the 3d day of May, 1871, applied to him for a deed of the same. Referring to the testimony on this point, the plaintiff says that " on or about April 20, 1871, I sent for Mr. Johnson and told him I would take the place. I called on Mr. Johnson, May 3d, 1871, and asked him for a deed. He said he had been to see his lawyer, and he told him he must get a description and have it surveyed. I asked for an abstract, and he said he would furnish my lawyer with one, in order that there should be no delay." The parties went on the 8th to an attorney, for the purpose of having the deed and mortgage made, according to the stipulations in the lease. These are acts on plaintiff's part, it seems to us, inconsistent with the previous holding, and such as clearly indicate a change in the relation of the parties. Rent by the lease was payable monthly in advance. A continuance in possession referrible

to the lease, ought, it should seem, to be accompanied with payment of the rent on the first of May. Instead thereof, the plaintiff on the 3d of May, applied for a deed and an abstract, which is promised forthwith, that there may be no delay. It is essential, says Story, (Eq. Jur. § 762,) that the acts should appear clearly to be done solely with a view to the agreement being performed. Surely, going to an attorney, for the purpose of performing an agreement, is such an act. Payment, after the lease is out, of an increased rent is said to be *per se* an equivocal act, being consistent with a holding from year to year. But when the plaintiff alleged that the landlord had accepted such rent, upon the foot of the alleged agreement, Lord Loughborough ordered the defendant to answer the allegation. *Wells v. Stradling, supra.*

In this connection we may observe, that the court finds as a fact that plaintiff, on the expiration of said lease, and upon her notice aforesaid, remained in possession of the entire tract, with the full approbation, consent and understanding of defendants, as being under and in pursuance of the terms of purchase; and if this is equivalent to a statement, that it was the understanding of the parties that she should so continue in possession, it is hard to see how, on such a state of facts, it could be found that, as matter of law, the possession of the plaintiff was that of a tenant holding over. *Wentworth vs. Wentworth,* 2 *Minn.* 275. But as the finding is obscurely worded, we prefer not to found upon it our approval of the conclusion of law above mentioned. But as we consider the said conclusion to be supported by the unequivocal acts aforesaid, the further conclusion follows, that, at the time of the execution of the instruments sought to be reformed, plaintiff could have compelled a specific performance of this partly performed verbal agreement. *Gen.Stat. ch.*41. The parties then and there undertook to perform it, the plaintiff in good faith,

but owing to defendants' fraudulent acts and silence, (for though the district court has given them no name, they speak for themselves as such,) the contract was not fully performed, though plaintiff supposed otherwise.

It would be a great defect in what Lord Eldon terms the moral jurisdiction of a court of equity, if there were no relief in such a case. *Gillespie vs. Moon*, 2 *Johns. Ch.* 596. There is, however, no difficulty in granting relief in such cases. If there had been no part-performances, entitling plaintiff to specific performance, a different question might present itself. *Glass v. Hulbert*, 102 *Mass.* 24. But this court holds, that it seems to be well settled that, where no statutory enactment intervenes, it is competent for a court of equity to rectify a deed or written contract, upon clear and satisfactory proof by parol evidence, to express the agreement of the parties. *Smith v. Jordan*, 13 *Minn.* 268.

A court of equity will not interfere to reform a contract on the ground of mistake, unless it is mutual. But mistake on one side and fraud on the other, will authorize a reformation. *Welles v. Yates*, 44 *N. Y.* 525. Either fraud or mistake will authorize it. *Gillespie v. Moon*, 2 *J. C. R.* 585; *Depeyster v. Hasbrook*, 1 *Kernan*, 582.

It seems a mockery of justice to say that the plaintiff has lost, has not still the right in equity to have a good title to all the land she bought. What possible answer could it be to a demand for a specific performance of a contract, that defendant had fraudulently imposed upon plaintiff, as and for such a performance, a deed, which was not? Or what difference could it make, in principle, whether such a deed was in blank, or described a part of the land? In either case, plaintiff's right to have the contract performed according to agreement is unaffected by the fraud, and the power of the court to give such relief is ample, either by reforming the instrument al-

ready in existence, or by directing a conveyance of the residue of the land. *Welles v. Yates, supra.*

The defendants object further that the evidence does not justify the findings. They specify that the evidence failed to show any authority on Johnson's part to act as his wife's agent.

The finding·objected to is, that upon plaintiff's notifying Johnson, as aforesaid, and applying for a deed, he, acting for both defendants, decided to procure and did procure an abstract of title and survey of the premises, and also a survey of the twenty acres thereof actually conveyed. The testimony already quoted, and the evidence that plaintiff then went to see Mrs. Johnson and " she repeated substantially what Mr. Johnson had said," shows that he was then acting for his wife as well as for himself, and Mrs. Johnson's conversation with plaintiff, on or about June 17th, 1871, shows that the deed was drawn as it was with her knowledge and assent, and her consciousness of the deceit thereby practiced on plaintiff. The case shows, also, that Johnson from the first and throughout assumed to sell and dispose of the property as his own, his " homestead," a place he had reserved for himself on which to " live and die." The negotiation for the lease and option of purchase, which his wife signed, were had with him. She was certainly knowing to them, and thus ratified, if she did not direct them. She, like every one else, spoke of it as the " homestead," and the evidence throughout makes it clear that this was one of those cases, (so frequent among us,) in which, though property (for whatever cause) is placed in the wife's name, its control is left entirely with the husband.

It is objected, further, that there is no evidence of any false representation. That defendants did not pretend to know the quantity of land, but merely gave their opinion, and plaintiff had as good opportunity to ascertain it as defendants.

Place v. Johnson.

Defendants agreed to sell, and plaintiff agreed to buy a certain parcel of land known as the Johnson Homestead, the boundary fence of which had been actually pointed out by them to plaintiff. The opinion of the parties as to the contents was entirely immaterial. The tract they both meant was that small farm, which Johnson was willing, without regard to whether there were eighteen or twenty or twenty-three acres of it, to sell for twelve thousand five hundred dollars. They say they made no representation at the time of the delivery of the deed. The notes of the survey of said twenty acres were given by them to plaintiff's attorney, the deed drawn therefor, and executed and delivered by defendants, without a word said as to its contents. But they had agreed to convey the Johnson Homestead, and they delivered the deed as and for a deed thereof, well knowing that it was not. This was a false and fraudulent representation; words were unnecessary. Nothing else is specified as to which the evidence is alleged not to justify the findings, and if the case purported, as it does not purport, to contain all the evidence. the objection of defendants could not prevail.

Defendants took a great many exceptions to the action of the court in overruling their objections to evidence. It is, of course, unnecessary to notice those objections for which no reason was assigned. The question to plaintiff: " In what way were you residing there," i. e., on the Johnson Homestead, " in the spring of 1871 ?" was objected to as incompetent, but was, in itself, entirely unobjectionable. If defendants thought the answer actually given was not evidence, they should have moved to strike it out. It was, of course, perfectly proper to ask her if she could describe the premises she occupied.

It is admitted, that the description by metes and bounds in the complaint is a correct description of the land demised.

There is, therefore, nothing in the objection of variance between the pleadings and evidence.

The defendants objected to the lease as evidence on several grounds, all of which are to the validity of the contract of sale therein. The lease, however, was admissible as a material step in the transaction which resulted in the instruments sought to be reformed. It would have been just as reasonable to object to proof of plaintiff's possession, as to proof of how she got possession. The objections being to the *lease*, as a whole, not to the contract of sale therein, were too broad, and were properly overruled.

It is said that the court erred in admitting proof of defendants' representation, made before the execution of the lease. Plaintiff was asked if she had conversation with defendants, prior to the lease, as to what the homestead was? This was objected to as irrelevant, incompetent and immaterial, but the objection was overruled and defendants excepted. In answer, plaintiff said that " in July or August, 1870, Mr. Johnson, with my eldest daughter and myself, went out on the lake in a boat, and he pointed out the boundary line and fence, and said it was not on the exact line, that it was a worm fence put up for sheep. We were then negotiating for the place, and our going out on the lake was for the express purpose of showing us the line." Plaintiff's case was, that the defendants agreed to sell her the whole place, not any twenty acres of it. It was material for her to show that while they were negotiating, defendants showed her the whole place as the subject of such negotiations, for it appears that the whole was enclosed by one fence.

Evidence was admitted, on similar objection, of statements of Johnson, made before the lease, as to the number of acres in the homestead, to the effect that he thought there would turn out to be twenty-one acres, but that he would sell the

place for twelve thousand five hundred dollars, without regard to the quantity of land. As the agreement in the lease was invalid, it is of no consequence whether the conversation was before or after its execution. Where fraud is alleged, any acts and declarations of the party, tending to show it, are competent, and knowledge or belief by defendants, that the land contained more than twenty acres, would certainly tend to prove the fraud alleged in this case.

The defendants furnished plaintiff an abstract of title, the caption of which was as follows: "Abstract of title to twenty acres, more or less, in the north part of S. W. $\frac{1}{4}$ of sec. 27, T. 29, R. 24, bounded on the east, south and west by J. S. Johnson's Addition to Minneapolis, and on the north by the N. line of said quarter section." This was objected to on the same ground, but was clearly admissible. It described the whole place, and was cogent proof, in connection with plaintiff's testimony, already referred to, of defendants' agreement to sell the whole.

One Chowen was asked if he knew a piece of property in the vicinity of Minneapolis, known as the Johnson Homestead ? which was objected to on the same grounds. If he knew, he was competent to describe it ; there could, therefore, be no objection to ascertaining whether he knew, or not.

Order appealed from affirmed.