JAMES H. WELLES, Respondent, v. GEORGE A. YATES, Appellant.

A court of equity will not interfere to reform a contract, on the ground of mistake, unless it is mutual. But mistake on the one side and fraud on the other will authorize a reformation.

Equity will also grant relief, where an attempt to perform an existing contract, as by execution of a deed, fails through misunderstanding on the part of the grantor, as to the effect of the instrument by which performance is attempted, although the mistake be not mutual.

Under a complaint alleging the facts upon which relief is claimed, and that, by mistake of the plaintiff, a deed does not contain a reservation in favor of the plaintiff, to which, under the prior contract between the parties, he was entitled, and that defendant well knew all of the facts, but not charging fraud in words, relief may be given on the ground of fraud on the part of the defendant.

An action for the reformation of such deed is not based upon the rescission of any contract, for fraud, so as to be within the rule requiring immediate disaffirmance. It seeks the performance of a contract. If there has been unreasonable delay in seeking relief, it will be refused; but it is in the discretion of the court, under all the circumstances, to grant or refuse it.

Having jurisdiction to amend the contract, the court thereby acquires the right, incidentally, to give relief in damages, or by such other mode as justice may require.

The plaintiff made a contract with the assignor of the defendant for the cutting of timber on the plaintiff's land, in consideration that one-half of the lumber manufactured therefrom should be delivered to the plaintiff. At the same time an executory contract was made for the sale of the land, to the same assignor, for a price representing the value of the land without timber, it being understood that the timber was reserved to the plaintiff by the contract first mentioned. Afterwards, the defendant, having succeeded to the rights of the assignor under both contracts, paid up the purchase money of the land. A deed was thereupon delivered to the defendant, which, by mistake on the part of the plaintiff, contained no reservation of any interest in the timber. The defendant was aware of the plaintiff's mistake, and received the deed knowing that the plaintiff supposed that the timber was reserved.

*Held* (EARL, C., contra), that the plaintiff was entitled to a reformation of the deed, on the ground of fraud, and to damages for the removal of timber by the defendant, claiming the same under the deed. *Held*, further, that the recovery of damages must be limited to a period not exceeding six years before commencement of the suit.

(Submitted September, 1870; decided May 13, 1871.)

APPEAL from an order of the General Term of the Supreme Court in the sixth district, affirming a judgment of the Special Term in favor of the plaintiff.

The action was brought for the reformation of a deed, exe cuted by the plaintiff, he claiming that a reservation of certain timber had been omitted, through mistake on his part; and also for an accounting by the defendant for timber taken from the premises conveyed.

An account was ordered to ascertain the value of the lumber taken since March 10th, 1851. The referee found the value at $2,041.72.

Upon the coming in of the referees's report, judgment was entered for the plaintiff, that the deed be reformed and corrected, and that he have judgment for the value of the timber removed by the defendant. This judgment was affirmed by the General Term in the sixth district, and the defendant appeals to the Court of Appeals. The facts appear from the opinion of the court.

*E. H. Benn,* for the appellant, cited *Kent* v. *Manchester* (29 Barb., 595); *Story* v. *Conger* (36 N. Y., 673); *Morris* v. *Dunlap* (33 N. Y., 676); *Botsford* v. *McLean* (45 Barb., 478); *Lanier* v. *Wyman* (5 Robt., 147); *Wemple* v. *Stewart* (22 Barb., 154); *Lyman* v. *United Ins. Co.* (17 John., 376); *Mayne* v. *Griswold* (3 Sandf., 464); *Beers* v. *Hendrickson* (6 Robt., 54); *Beech* v. *Lee* (3 Abb. N. S., 204); *Borst* v. *Cary* (15 N. Y., 505); *Kane* v. *Bloodgood* (7 John. Ch., 90); *Reade* v. *Reade* (5 Ves., 749); *Van Rhyen* v. *Vincent* (1 McCord's Ch., 310); *Lansing* v. *Starr* (2 John. Ch., 150); *Maddox Heirs* v. *Davison* (3 Munroe, 39); *Parque* v. *Allen* (3 J. J. Marsh, 421); *Baldwin* v. *Calkins* (10 Wend., 167); *Waggoner* v. *Jermaine* (3 Den., 306); *Bank of Lansingburgh* v. *Grady* (1 Barb., 542); *Warren* v. *Leland* (2 Barb., 613); *Jenks* v. *Smith* (1 Comst., 90); *Smith* v. *Benson* (1 Hill, 76); *Kelsey* v. *Griswold* (6 Barb., 426); *Murray* v. *Busling* (10 John., 175); *Boorman* v. *Jenkins* (12 Wend., 573); *Harper* v. *Albany M. Ins. Co.* (17 N. Y., 194); *Austin* v. *Sawyer* (9

Cow., 39); *Jackson* v. *Cray* (12 John., 427); *Barlow* v. *Scott* (24 N. Y., 40); *N. Y. Ice Co.* v. *N. W. Ins. Co.* (20 How., 424); *Phillips* v. *Gorham* (17 N. Y., 270); *Stevenson* v. *Buxton* (15 Abb., 352); *Bradley* v. *Aldrich* (40 N. Y., 510); *Davis* v. *Morris* (36 N. Y., 572); *Sharp* v. *Mayor of N. Y.* (18 How., 213); *Cameron* v. *Freeman* (13 How., 437); *McCullauh* v. *Bradie* (13 How., 346).

*Geo. Sidney Camp*, for the respondent, cited *Barlow* v. *Scott* (24 N. Y., 40); *Johnson* v. *Hathorn* (2 Keyes, 484); Story Eq. Jur., §§ 151, 162; Fry on Sp. Per., §§ 484, 486; *Ball* v. *Storie* (1 Sim. and Stu., 210); *Wiswall* v. *Hall* (3 Paige, 313); *Matthews* v. *Terwilliger* (3 Barb., 54); *De Peyster* v. *Hasbrouck* (1 Kern., 582); *Gillespie* v. *Moore* (2 John. Ch., 595); *Valentine* v. *Conner* (40 N. Y., 248); *Pearce* v. *Verbeake* (2 Beav., 333); *Harvey* v. *Peaks* (1 Munf., 527); *Hyde* v. *Tanner* (1 Barb. Ch., 84); *Many* v. *Beekman Iron Co.* (9 Paige, 188); *Phœnix Fire Ins. Co.* v. *Gurnee* (1 Paige, 278); *Levy* v. *Joyce* (1 Bosw., 622); *Bartlett* v. *Judd* (21 N. Y., 200); *Bidwell* v. *Astor Mut. Ins. Co.* (16 N. Y., 267); *Wilcox* v. *Plummer's Ex'rs* (4 Peters., 182); *Robinson* v. *Black* (2 Burr., 1086); *Davis* v. *Morris* (36 N. Y., 593).

HUNT, C. It will not be necessary to consider, in detail, the fifteen points presented by the appellant, and so ably argued by his counsel. The discussion of a few of them will settle principles that may serve to decide the case.

The complaint, in substance, alleged that on the 28th of May, 1846, the plaintiff was the owner of 110 acres of land, being lot No. 4; that on that day he sold the same by executory contract, with the timber thereon, to T. & T. Trevor, for $17 per acre.

That on the 7th day of December, 1846, he was the owner of lot No. 5, containing 141 acres, and then entered into an agreement with the same parties, by which they undertook to cut the timber standing thereon, manufacture the same into boards and planks, and to give the plaintiff one half

of the lumber thus manufactured.    Certain other details were provided, which it is not necessary to specify.    At the same time, the plaintiff entered into an executory contract with the same persons, for the sale of the 141 acres, at four dollars per acre.

That these two pieces of land were of the same value ; that the timber growing on the latter piece was of the value of $5,000, and that such timber, in the understanding of the parties, was reserved to the plaintiff by the manufacturing contract mentioned, and that the price of four dollars per acre was for the land simply, the timber being reserved to the plaintiff. That, after proceeding for some time in the manufacture of the lumber, the purchasers became embarassed, and the defendant took their place in the contract, and without new or further negotiations, a calculation was made of their payments, the balance found due paid by the defendant, and an absolute deed of the two pieces of land, without reservation of the timber, made by the plaintiff to the defendant.    That the defendant well knew all of the facts in the complaint recited. The plaintiff then avers " that through and by mistake he failed to insert in the said last-mentioned deed (of the 141 acres) any reservation of the timber mentioned and embraced in the contract secondly above mentioned ;" and also avers demand and refusal to amend.    The prayer is that the deed may be corrected, so as to be made to contain a reservation of the timber, and that the plaintiff may have an accounting as to the timber taken and removed by the defendant.

The judge found that there was an error and mistake on the part of the plaintiff, as averred by him.    He found also, that there was no mistake on the part of the defendant, but that he well understood the plaintiff's error.    He knew that the timber was not reserved, and he knew that the plaintiff supposed and understood that it was reserved.    He received the deed, failing to correct the plaintiff's error, but intending to reap the profits of it.    He knew that he received of the plaintiff's estate four or five thousand dollars more than the plaintiff intended to give him, or than he supposed he had

given him.  The mistake was unilateral; on the part of the plaintiff only.  On the part of the defendant, there was no mistake, but something worse.  It was a fraud, as palpable as if he had made affirmative representations to induce the error; as gross as if he had put his hands in the plaintiff's pocket and feloniously abstracted his money.  (1 Story, Eq., §§ 187, 137, 140, 147, 152, 153, 167, 168, 191, 214 to 217; *Waldron* v. *Stevens*, 12 Wend., 100; *Wiswall* v. *Hall*, 3 Paige, 313; *Hill* v. *Gray*, 1 Stark., 434; 2 Eng. C. L. R., 167.)

The point here arises, can there be a judgment to reform the contract, there not being a mutual error, but error on one part and fraud on the other?

It is laid down, in many authorities reported and elementary works, that there must be a mutual error, to authorize this interposition of a court of equity.  (See Story, *supra*, § 155; *Story* v. *Conger*, 36 N. Y., 673; *Nevius* v. *Dunlap*, 33 id., 676; *Lyman* v. *U. S. Ins. Co.*, 17 J. R., 376.)  The cases where this general statement is made are very numerous, and it is well said that to exercise this power, where one party only has been in error and the other has correctly understood it, would be making a new contract for the parties, and would be doing injustice to the party who made no mistake.  On this point two distinctions may be noticed.  1st. Those cases will be found to have in them the element of honesty on the part of the one correctly understanding the contract.  Where two parties enter into a contract, and an error is claimed by one party to exist on an important point, which is claimed to be correct by the other party, it cannot be amended, as against the party correctly understanding it, he acting in good faith, and supposing the other to have understood the contract as he did.  This rule does not apply where there is fraud.  Either fraud or mutual mistake will authorize the reformation.  (See *auth. sup.* and *De Peyster* v. *Hasbrouck*, 1 Kern., 582; *Gillespie* v. *Moon*, 2 J. C. R., 585; *Barlow* v. *Scott*, 24 N. Y., 40; *Rider* v. *Powell*, 28 N. Y., 310.)  In his supplementary points the appellant expressly concedes this proposition.

HAND—VOL. V.   67

2. This is the consummation of an existing contract, about the terms of which there was no dispute. This contract it was attempted to perform. There has been a failure to perform it, by the misunderstanding, on the part of the plaintiff, of the effect of the instrument by which performance was attempted. A reformation is permitted in such case, although the mistake be not mutual. (See the cases before cited, and *Cole* v. *Brown*, 10 Paige, 534.)

The result of the cases justifies a reformation of a contract, when there is either a mutual mistake, that is, a mistake common to both parties, or when there is fraud. In his complaint, the plaintiff has simply stated the facts on which he claims relief. After setting forth the facts, he adds, that by mistake, *he* failed to insert in the deed a reservation of the timber. He does not charge that it was a mistake common to both parties. Nor does he charge it to have been a fraud. He gives no name to the conduct of the defendant. The facts, as found by the referee, and the judgment rendered by him, are in conformity to the allegations of the complaint. They establish, not a mutual or common error, but an error on the part of the plaintiff and fraud on the part of the defendant.

The defendant, by the judgment of the court upon the facts, occupied the place of the original contractors and undertook to perform their contract. This was the finding of the judge, and the evidence, with the circumstances, justified this finding. The fraud was in the deceitful performance. If the judgment of the court below is carried out, he will not be made a party to a new contract, which he would never have assumed. He did assume the original contract. He, therefore, became bound by it. When the court now compel him to abandon his fraudulent contract, he is remitted to the original agreement. He has no ground, therefore, to say that, by being convicted of a fraud, he is compelled to enter into a new contract. Nor is he to be relieved by the rule that a party, seeking to be relieved from fraud, must be ready, prompt and eager in his demand for redress. When a party seeks to *rescind* a contract, on the ground of fraud, he must undoubtedly

be prompt and ready in his disaffirmance. He has the election to affirm or disaffirm. If he elects the latter, he must do it at once. He is not permitted to hesitate and balance advantages. (*Masson* v. *Bovet*, 1 Denio 69; *Beers* v. *Hendrickson*, 6 Robt. 54; *Tomlinson* v. *Miller*, MSS.

In the present case, the party does not ask to have the contract rescinded. He does not seek to have it declared void. On the contrary, he insists that it is valid. He asks that it may read exactly as the parties originally agreed, and that all its parts may be completely performed. In such case, the rule is, that the party must show himself ready and eager for its performance. (1 Story's Eq. Jur., § 776.) The plaintiff has given sufficient evidence of his readiness and eagerness to perform. If there has been an unreasonable delay in seeking relief, the court will refuse it. (Ib. and 1 Fonb. Eq. b. 1, ch. 6, § 2, n. e.) It is a question of discretion in the court whether, under all the circumstances of time, repeated applications and refusals, the condition, knowledge, expectations and hopes of the parties, the relief should be granted. There is no positive or rigid rule, like that existing in the case of an attempted rescission. I am satisfied with the decision, on this point, of the court below, and the judge trying the cause. (1 Story, Eq., § 529; *Bidwell* v. *Astor M. Ins. Co.*, 16 N. Y. R., 263.)

The court, having jurisdiction of the cause to amend the contract, thereby acquired the right, incidentally, to give relief in damages, or in such mode as justice required. (*Rathbone* v. *Warren*, 10 J. R., 587; *Kempshall* v. *Stone*, 5 J. Ch. R., 193; *Woodcock* v. *Bennett*, 1 Cow. R., 711; *Bidwell* v. *The Astor M. Ins. Co.*, 16 N. Y. R., 263; Story Eq., § 794; *Rundle* v. *Allison*, 34 N. Y., 180.)

The defendant contends, further, that no damages can be recovered by the plaintiff for timber that was cut more than six years before the commencement of the action. The argument of the defendant's counsel is, that the reformation of the deed is merely a means, by which the plaintiff seeks to recover damages for the timber taken, and that its correction is simply a part of the evidence to authorize him thus to recover;

that his claim is therefore a legal one, and cannot extend back beyond six years. The authorities cited by the defendant do not sustain this position. The most plausible is that of *Borst* v. *Corey* (15 N. Y. R., 505), which was an action to enforce, in equity, a lien for the unpaid purchase-money of land. The court held that the action could not be sustained, for the reason that the debt sought to be enforced was barred by the statute of limitations. The debt they held to be the principal, the lien the incident, and the principal being ended, the incident could not be enforced. At the same time, the court conceded that, where a mortgage was given to secure the payment of a simple contract debt, the lapse of six years was no bar to an action to foreclose the mortgage. The authority of *Mayor* v. *Colgate* (2 Kern., 140), was conceded, where an assessment was attempted to be enforced more than six years after the assessment had become due and payable. In the present case, the question is, not what action can be sustained after the deed is reformed, but what action could have been sustained before its reformation. The reformation had not occurred when the suit was commenced, and the right of the parties was determined by the unreformed deed. That deed conveyed to the defendant, without reservation, the 141 acres in question. It carried with it complete title to the trees. The plaintiff could not have sustained an action for their conversion. He would have been told that defendant had a legal title. The reformation of the deed, in the present case, is the principal, and not the incident. Damages are the incident, not the principal. It is the title, which the judgment of reformation gives, that warrants the claim for damages; not the claim for damages that creates the legal title. Complete justice, and nothing more, is done by the judgment in this respect, as it stands.

The defendant also insists that, in the view that the recovery against the defendant is sustained upon the ground of fraud, and not of mutual mistake, the cause of action is barred in six years from the discovery of the fraud. He further says that the judge has expressly found as a fact, that the

cause of action has not accrued within six years from the commencement of the suit. I have looked through the testimony carefully, and I do not find any evidence that the plaintiff discovered the fraud perpetrated upon him as early as six years before the commencement of the suit. He did, undoubtedly, discover his own error, soon after its occurence, and applied to the defendant's agents for its correction. He says that "he had confidence in them and expected all would have gone on as though it had been reserved." In other words, he had discovered his own mistake and believed it to be a mutual mistake, which the defendant would willingly rectify. He says further of the defendant's agent: "He seemed willing to do something. They proposed leaving it out. They never told me I could not have the timber. They always gave me to understand that they would settle it in some way. They always gave me to understand that they would do something about it. Neither of them ever told me I should not have so given the deed, if I did not mean to part with the timber." This evidence does not show a knowledge of the fraud. It does not show the plaintiff's knowledge that the defendant knew, when he took it, that the deed conveyed the absolute ownership of the trees, and that the plaintiff was ignorant of that fact, but supposed the trees were reserved, and that the defendant failed to correct his error. It does not even show that he supposed the defendant meant to insist upon retaining the benefits of the error. It shows rather that the plaintiff was constantly deluded with the idea that the mistake would be corrected. The judge has not found that the plaintiff discovered the fraud within more than six years before suit brought, and there was no evidence on which he could have been justified in so finding.

When the cause of action accrued in this case is a question of law. It was either when the transaction occurred or when the fraud was discovered.

The judge has found that the cause of action did not accrue within six years before suit brought. He states, in his opinion, that the action being to reform the contract, and

the accounting being incidental, the action falls under the 97th section of the code, which requires it to be brought within ten years after action accrued. He fixes the occurence of the transaction as the time from which by law the statute begins to run. The defendant now asks us to hold this as a conclusive finding of fact, that the fraud was discovered more than six years before suit brought. This we cannot do. Upon the theory that the running of the statute begins with the date of the occurrence, more than six years had elapsed, and such was the theory of the judge trying the cause. On the theory that it runs from the discovery of the fraud, there is no such finding, nor is there evidence to prove it. All presumptions are in favor of the judgment, and the contrary must be taken to be the fact.

I have thus considered the most important of the questions raised by the appellant. There are several other objections stated in the points, which I have also examined. They furnish no valid ground for asking a reversal of the judgment.

A majority of the court concur in the opinion that the plaintiff is entitled to relief. A majority of the court do not concur with me on the question of damages, and are of the opinion, that the recovery of damages, for a period exceeding six years prior to the commencement of the suit, was erroneous. The judgment of the court will therefore be, that the judgment of the General Term be affirmed, without costs of the Court of Appeals to either party, provided that the plaintiff shall, within thirty days after the entry of this order, serve on the defendant's attorney a stipulation, deducting from the judgment of April 6th, 1863, the sum of $2,407.45, as of that date. If such stipulation be not served, then the judgment shall be reversed, and a new trial ordered, with costs to abide the event. In case the attorneys do not agree as to the details of the judgment, the same can be settled before one of the commissioners.

EARL, C., dissenting. As I cannot concur with my brethren in this case, I will briefly give the reasons for my dissent.

No mistake is alleged in the contracts, and no reformation of them is claimed. And under no allegations or proof could the contracts be reformed, as a cause of action, for such purpose, would be barred by the statute of limitations.

If, as claimed by the plaintiff in his complaint, and by his counsel on the argument before us, the deed was given in pursuance and in fulfillment of the contracts, then there can be no reformation of the deed, as it is in precise conformity to the contracts. If the two contracts of December 7th, 1846, are construed together, they must be read as if embodied in one; and the timber is not reserved, and the contract does not provide for any reservation in the deed. The vendees were to get out certain lumber upon shares, and were to pay four dollars per acre besides. The contract in reference to the lumber was a binding contract, and, if performed as the parties contemplated, it would be fully performed before the deed was required to be given; and such was manifestly the intention of the parties, and hence, no provision was made for any reservation in the deed. The deed was given without any mention of the lumber, and hence, the only claim the vendor could thereafter have, upon the lumber contract, was to sue for damages on account of its non-performance.

The only contract the defendant ever made or intended to make, as found by the referee, is that which is embodied in the deed. He never intended or was willing to take a deed with any reservation in it. What right, then, has a Court of Equity to reform the deed, so as to give him such a deed as he was never bound to take? There was never a time when, by action for specific performance, he could have been compelled to take a deed with a reservation, and the court has no right to compel him to take such a deed by the reformation of the one he did take.

If, by fraud, or mistake on his part, the plaintiff was induced to give this deed, the only relief he could have was to set aside the deed; and to obtain this relief, it was his duty, on the discovery of the fraud or mistake, to proceed promptly, and not ratify the deed by taking the money on the note

given for the purchase price, after he discovered the mistake or fraud.

As I understand the opinion in which my brethren have concurred, it sustains the relief granted to the plaintiff, upon the ground of fraud, and yet the complaint does not in any way intimate even that the defendant was guilty of any fraud, nor does it allege that the defendant used any artifices to procure the deed to be drawn with the reservation omitted, or that he knew it was omitted. The charge of fraud should have been distinctly made in the complaint, so that the defendant could have taken issue upon it.

And it does not appear that any claim was made, at the trial, that the defendant was guilty of fraud, and the case was manifestly not tried upon any such theory. The judge at Special Term did not put his decision upon the ground of fraud. If he had, he would certainly have decided against the plaintiff, under his finding as to the statute of limitations, as follows: " That within a month after the execution of said deed, the plaintiff discovered said mistake, and shortly thereafter applied to the defendant to correct the same, which he neglected and refused to do; but proceeded to cut large quantities of said timber and appropriate the same to his own use; that the cause of action for which this suit is brought has not accrued to the plaintiff within six years before the commencement of this suit."

The learned judge evidently proceeded and granted relief upon the ground that the scrivener made a mistake in drawing the deed, and this was the ground upon which the General Term placed its decision of affirmance. The cause of action for the mistake was not barred by the statute of limitations, because the action was commenced within ten years from the time the alleged mistake occurred.

A cause of action, for such a fraud as is now alleged in this case, is deemed to accrue, when the aggrieved party discovers the facts constituting the fraud, and it is barred in six years from that time. (Code, § 91.) All the fraud, if any, that was perpetrated in this case was in procuring and taking the

deed, without the reservation, and this was discovered, according to the finding of the judge, more than nine years before the suit was commenced, and hence I cannot be mistaken in saying that relief was granted at Special Term upon the ground of mistake alone, and not of fraud.

And still further, the counsel for respondent, in his argument before us, did not claim to sustain the judgment below upon the ground of fraud, but upon the ground of mistake alone.

Hence, under all the circumstances, I cannot consent to uphold this judgment, or any part of it, upon the ground of fraud, against the decisions of both courts below, the claims of plaintiff's counsel, and the explicit finding of the judge, at Special Term, that the cause of action for fraud was barred by the Statute of limitations. It was the duty of the plaintiff to show that he discovered the fraud within six years before the commencement of the suit, and there can be no pretence that he gave any evidence to show this.

I concur with my brethren in holding, that in any view of the case, the plaintiff could recover only for timber cut within six years before the suit was commenced.

For affirmance, as modified, LOTT, Ch. C., and HUNT and LEONARD, CC.

For reversal, EARL, C. GRAY, C., not voting.

Judgment affirmed, without costs to either party in the Court of Appeals, provided the plaintiff, within thirty days after the entry of this order, serves on the defendant's attorney a stipulation, reducing the judgment $2,407.45 and interest from the date of the judgment, April 6, 1863. If such stipulation be not served, then the judgment is reversed and a new trial ordered, costs to abide the event.