CRESCENT MINING COMPANY, Respondent, v.
WASATCH MINING COMPANY, Appellant.

Contract—Waiver of Condition.—A party to a contract may dispense with a condition in his favor, and when this is done, it is the same as though the thing dispensed with had been done.

Contract to Convey Real Estate— Reference to Description in a Deed.—Where a contract to convey refers to a deed for a description of the real estate, it is to be construed as though that description were written in the contract.

Deed—Two Contradictory Descriptions.—Where a deed contains two descriptions, the first definite, certain and minute by metes and bounds; the second description indefinite, contradictory of of the first, and uncertain, and opposed to the intention of the parties, the first description must control.

Id.—Reformation.—Where a deed executed in pursuance of a contract to convey, omitted certain ground contained in the contract, and all the negotiations between the parties up to the time the contract was made, were, with reference to the entire property, including that omitted, that it was intended by both parties to include the omitted premises, that it was the intention of the plaintiff at the time of receiving the deed, to have the omitted premises conveyed to them as provided in the contract, and that this intention and understanding were well known to the defendant at the time of executing and delivering the deed; held, that a reformation of the deed would be decreed.

Appeal from a decree of the district court of the third district, and from an order refusing a new trial. The opinion states the facts, except the findings of the court, which found that it was the intention of both parties to include the omitted premises in the deed sought to be reformed, and that the said premises were omitted through mistake and inadvertence.

*Mr. W. H. Dickson* and *Messrs. Bennett, Kirkpatrick & Bradley*, for the appellant.

The complaint does not state a case for relief, because it shows that the Wasatch Mining Company was not required to make a deed until the purchase price was paid.

If any other contract between the parties required the making of the deed, it is not alleged in the complaint and recovery cannot be had: *Crocket* v. *Lee*, 7 Wheaton, 522 *Carmal* v. *Banks*, 10 Wheat., 101; *Harding* v. *Handy*, 11 Wheat., 103; *Harrison* v. *Nixon*, 9 Pet., 483; *Foster* v. *Goddard*, 1 Black, 506; *Ferguson* v. *Ferguson*, 2 N. Y., 360.

The findings are not within the issues. The complaint charged fraud. The findings state mistake.

*Murcier* v. *Lewis*, 39 Cal., 533; *Devoe* v. *Devoe*, 51 Cal., 543; *Mendrau* v. *Grix*, 51 Cal., 151; *Morenhent* v. *Bowen*, 42 Cal., 591; *Eyn* v. *Potter*, 15 Howard, 42; *Tillenghast* v. *Champlin*, 67 Am. Dec., 510.

The evidence is insufficient to support the findings. No mistake on part of defendant is shown, and the proof must be made beyond a reasonable doubt: *Lyman* v. *Insur. Co.*, 17 Johns., 373; *Cowles* v. *Bowen*, 10 Paige, 526; *Irnham* v. *Child*, 1 Bro., 94; *Gillespie* v. *More*, 2 Johns., Ch. 585; *Nevins* v. *Dunlap*, 33 N. Y., 676; *Jackson* v. *Andrews*, 59 N. Y., 244; Wood Stat. Frauds, p. 843, sec. 504 and note; see also p. 869, sec. 534; *Agard* v. *Valencia*, 39 Cal., 292; *Agard* v. *Whitney* (Or.), C. W. C. R., 103; Ld. Cases Eq. Vol. 2, Pt. 1, pp. 980, 981, 982; 2 Pom. Eq., sections 859, 862, 595; *Tinman* v. *Gibney, et al.*, 24 Wis., 190; *Purcell* v. *Miner*, 4 Wall., 513; *Heann* v. *Marine Ins. Co.*, 20 Wall., 488; *Maxwell Land Grant Case*, 121 U. S., 325; *Stockbridge* v. *Hudson Iron Co.*, 107 Mass., 290.

*Mr. R. N. Baskin* and *Mr. P. L. Williams*, for respondent.

The appellant did not demur to the complaint, but filed an answer joining issues between the parties.

The evidence of respondent, set out in the statement, was admitted without objection at the trial, and the appellants, after respondents closed, introduced in rebuttal its evidence.

Under these circumstances the appellant cannot make the objection in this court for the first time that the case

made by the proof differs from the averments of the complaint. Therefore, if the evidence warrants the findings and judgment, the appellant must fail.

*Marshall* v. *Ferguson*, 23 Cal., 70; *Boyve* v. *California Stage Co.*, 25 Cal., 471; *Tyng* v. *Commercial Co.*, 58 N. Y., 308; *Belknap* v. *Sealy*, 14 N. Y., 147; *Smith* v. *Rowe*, 7 Colo., 95; *Manice* v. *Brady*, 15 Abb., 173; *Bell* v. *Knowles*, 45 Cal., 194; *Friedly* v. *Scheelz*, 11 Amer. R., 697; *Bank of Columbia* v. *Magruder*, 14 Amer. R., 271-274; 1 Boone Code Plead., sec. 215, and cases cited.

Aside from the question of fraud, an issue of inadvertence or mistake is made by the pleadings.

If the negotiations and sale to respondent included the property in dispute, as alleged in complaint, and the deed from the appellant as admitted by it was intended to convey the property so negotiated for and sold, and respondent, as alleged, accepted it under the belief that it embraced all the property, so purchased, then it follows that the parties acted in the premises aside from the consideration of fraud, inadvertently or by mistake.

The pleadings gave rise to such issues. The evidence on both sides was mainly directed to these issues, and the court found them in favor of the respondent.

This disposes of the two first objections urged in appellant's brief.

HENDERSON, J.:

The complaint in this case is filed to obtain a reformation of a deed made September 1, 1886, by the defendant to the plaintiff, so as to include 2.55 acres of ground not included therein. The premises in dispute are located in the Uintah mining district, and are part of what is known as the "Walker and Walker Extension" and "Buckeye Mining Claims," as located. The material facts, as shown by the pleadings and testimony, are as follows: The Walker and Walker extension and Buckeye mining claims were first located as contiguous and adjacent properties. Thereafter, what is known as the "Pinyon and Pinyon Extension Mining Claim" was located, and diagonally traversed one end of the said Walker and Walker extension and Buck-

eye claims, thereby creating an interference with said last-named claims, the area of such interference being 2.55 acres of land, and being the premises here in dispute. The owners of the Pinyon and Pinyon extension claim first made application for their patent, which was issued to them October 18, 1873, describing the property by metes and bounds; and by mistake and inadvertence the said application and the patent also included the said area of interference which belonged to the Walker and Walker extension and Buckeye claims. After such location of said Walker and Walker extension and Buckeye claims, the owners thereof incorporated and thereby formed the defendant company, and transferred by such incorporation said mining claims to said defendant. Thereafter the defendant made application for patents to its said claims, whereupon the said mistake in the application and patent to the owners of the Pinyon and Pinyon extension claim was discovered, and the defendant at once made claim to the owners of the Pinyon and Pinyon extension, and asserted their ownership and right to the area of interference, and this claim and right were acknowledged; and to correct said mistake in such application and patent, the owners of said last-mentioned claim, on the 28th day of October, 1874, conveyed to the defendant company, by deed, said area of interference, describing the same by metes and bounds, stating a consideration of one dollar, and containing the following provisions: "The premises hereby intended to be conveyed is the area shown on the diagram hereto attached, being 2 55-100ths acres, more or less, and being the ground whereon conflict exists between the claim of said Pinyon and Pinyon extension, and the Buckeye and Walker and Walker extension mining claims, the said premises having been by inadvertence granted to said first parties by the government of the United States by patent. . . . And whereas the premises hereby conveyed being the ground included within the lines of the said Pinyon and Pinyon extension, and the said Buckeye and Walker and Walker extension claims were never intended to be applied for by the applicants for patent on said Pinyon and Pinyon extension claim. And whereas,

it has been supposed that said conflict grounds are in-cluded in said patent, now it is the sole object and intent of this instrument, and the parties hereto, to release and quit-claim to said second parties, the rightful claimants and owners of said conflict ground, whatever right, title, or in-terest may have been inadvertently acquired by the patentees under said patent in and to said premises in con-flict." After receiving such deed, and on the 6th day of November, 1874, the defendant made application for, and a patent was thereupon issued to it, first describing said claims as located by metes and bounds, and then except-ing from the operation thereof the portion before that time patented to the owners of the Pinyon and Pinyon exten-sion claim, being the area of interference, which patent it received, thereby perfecting its title to its claims as they were located.

The owners of the said Walker and Walker extension and Buckeye claims were in the actual occupancy of said claims as located until the creation of said defendant com-pany, and the said defendant, from the time of such incor-poration, commenced and prosecuted mining operations thereon. That, as a consequence, the said defendant became largely indebted, and finally, about the year 1879, William Jennings, who was one of the incorpor-ators of said defendant, and owned 1,500 shares of its capital stock, and his son, one Joseph A. Jennings, took entire possession of said last-named mines, including said area of interference, and began to work and operate them on their own account, claiming to own the same. In the meantime some of said claims against said defendants passed into judgments, its interest in the claims being levied upon by virtue of executions issued thereon. The same were sold by the marshal, and bid in by the said William Jennings. The discovery points of both said claims, and the surface workings or entries to the veins of mineral therein, were at all times wholly within the area of interference. The said William and Joseph A. Jennings continued to operate said mines until January 24th, 1883, when the defendant company commenced an action in the third district court against them, and in their

complaint in said action described the said Walker and Walker extension and Buckeye claims as located, including the area of interference, and alleged that the defendants therein were in possession of said property, operating the same, and had taken a large amount of valuable ore therefrom, and averred that the said defendants therein had taken possession of said property by virtue of an agreement between them and the plaintiff therein, to the effect that they should take possession of said property, operate the same, and from the proceeds thereof pay claims against said plaintiff, and that advances made by said defendants to pay indebtedness should be a lien upon such property, and a preferred indebtedness, and that defendants, under such agreement, should and might purchase said property on execution sales, and hold the same in trust for said plaintiff; and further averred that said defendants had made purchases at execution sales pursuant to such agreement, and held the property in trust for plaintiff; that defendants had extracted more than sufficient ore to remunerate them for all advances, but refused to convey said property, and claimed to own the same, and denied plaintiff's right thereto. The marshal's deeds on such sales described the property as the "Walker and Walker Extension" and "Buckeye Mining Claims," as patented. The complaint prayed that the plaintiff therein be decreed to be the owner of the property, and for an accounting. The defendants therein answered, admitting their possession and claim of ownership to the entire premises; denied the agreement stated in the complaint; averred that the plaintiff had abandoned said property as unprofitable; that they had purchased at the marshal's sale in their own right, and that they were the owners of the property. In that case the discrepancy between the descriptions "as located" and "as patented" does not seem to have been mooted or suggested. In the mean time, and prior to the commencement of said action, the plaintiff herein, the Crescent Mining Company, had become the owner of the Pinyon and Pinyon extension claim, and of various other claims located adjacent to and entirely surrounding the property so owned by said Wasatch Mining

Company, and were mining and operating thereon; and, being such owner, it was desirous of purchasing said Walker and Walker extension and Buckeye claims, as located, and, it being in dispute and litigation between said Wasatch Mining Company and said William and Joseph A. Jennings, and uncertain as to which would be adjudged to be the owner thereof, the plaintiff herein, by its officers, conceived the idea of having both of said parties to said litigation agree with it upon a price for said property, and to receive such price, and let the same abide the event of such litigation, and thereby obtain the title to said property, pending said litigation. And to effectuate this plan said plaintiff first negotiated with the Jennings party, and such negotiations were had that the price of five dollars per share of the capital stock of said Wasatch Mining Company, amounting to $50,000, was agreed upon between plaintiff and the Jennings party as the purchase price of said property; and said William Jennings being the owner of 1,500 shares of the capital stock of said Wasatch Mining Company, to which he would be entitled if the Wasatch Mining Company succeeded in said litigation, an agreement was finally perfected on the 8th day of March, 1883, between the plaintiff and the Jennings party.

The said William and Joseph A. Jennings, on that day, made a deed to the plaintiff, the consideration expressed therein being $50,000, describing all of said property, including the area of interference or disputed ground, by metes and bounds, and following such description was the following provision:

"The said described premises being mineral entries Nos. 87 and 88, lots 40 and 41, and patented as the 'Walker and Walker Extension' and 'Buckeye Mining claims.'" At the same time, and as part of the same transaction, and bearing the same date, they entered into a written contract, which recited the making of the deed on that day, and referred to it for a description of the premises affected by the contract, and also cited the pendency of said action between said Wasatch Mining Company and the said William and Joseph A. Jennings, and that the said title involved the title to said lands. It provided that the con-

tract and the deed should be deposited with the Deseret National Bank, subject to the following conditions: That, as soon as said action should be determined, if such determination was in favor of said William and Joseph A. Jennings, and the title thereby vested in them, the said plaintiff should pay the said Jennings $42,500, the balance of the purchase price of said lands, $7,500 thereof having been paid, that being the amount represented by stock owned by William Jennings; and upon such payment the plaintiff to receive said deed. It further provided that if at any time the Jennings should indemnify plaintiff against the claim of the Wasatch Mining Company, that payment of said $42,500 should be made, and the deed delivered, and that if at any time the plaintiff should obtain a conveyance from the Wasatch Mining Company, or a waiver of its claim, payment should be made, and the deed delivered; that plaintiff might at once enter into possession, but should not remove any ores until the delivery of the deed. At the same time of making this contract, and as part of the same transaction, William Jennings transferred and delivered to the plaintiff his said 1,500 shares of the capital stock of said Wasatch Mining Company. At once, after the making of this contract, the plaintiff entered into possession of all the property, including the disputed premises, and has remained in possession. Thereupon the plaintiff commenced to negotiate with said defendant, conducting negotiations on its part by one E. P. Ferry, one of its directors, its president and most of its directors residing in Michigan; the negotiations being conducted mostly on the part of the defendant by J. G. Sutherland, its attorney. Various negotiations were had, which resulted in an arrangement with defendant on the basis of the Jennings contract, and on the 9th day of July, 1886, the parties hereto entered into a contract, (the defendant being the first party and the plaintiff the second party thereto,) a portion of which contract is as follows: "Said party of the first part in consideration of the agreement on the part of the second party, hereafter set forth, hereby agrees with said second party, its successors and assigns, to join with the representa-

MINING CO. *v.* MINING CO. [June, 1888.

tives and successors in interest of William Jennings, conveying to the said second party these two patented mining claims, situated in Uintah mining district, Summit county, in the territory of Utah, called the 'Walker and Walker Extension' and 'Buckeye Mining Claims,' in fee, according to the contract heretofore made between said second party and William Jennings, in his lifetime, on payment into the district court for the third judicial district of said territory, subject to an order of the court in an action in which said party is plaintiff, and said representatives of William Jennings and others are defendants, with effectual assurance by said second party that fifteen hundred shares of first party's capital stock, held by said Jennings, and transferred by him at the making of said contract, to said second party, shall not participate in the distribution by said first party of said sum of forty-two thousand five hundred dollars; or that, in default of such joint conveyance, said first party will convey in fee said property to said second party after the final determination of said suit, if said first party shall be decreed to be the owner thereof, on payment to said first party of said sum of forty-two thousand five hundred dollars, and said assurance relative to said fifteen hundred shares of said first party's capital stock as aforesaid."

The contract further provided that, upon receiving such deed, the plaintiff should make payment and give assurance regarding the participation of said 1,500 shares of stock. Afterwards, on the 1st day of September, 1886, for the purpose of executing the said contract, the defendant made and delivered to the plaintiff a deed (the one sought to be reformed), describing the property as follows: "Those patented mining claims, situate in Uintah mining district in said county and territory, named, respectively, the 'Walker and Walker Extension Mine,' as described in patent from the United States to said party of the first part, dated November 6, 1874, and recorded in the office of recorder of said county, in Book E, on pages 19 to 26; and also the 'Buckeye Mine,' as described in patent from the United States to said party of the first part, dated November 6, 1874, and recorded in the office of said re-

corder of said county, in Book E, on pages 27 to 34."
And the plaintiff executed and delivered to defendant a
mortgage covering its entire group of mines, and the prop-
erty covered by the deed, described as it was described in
the deed, conditioned for the payment to defendant of the
amount unpaid whenever it became entitled to it; and
having secured to the Jennings' party to their satisfaction
payment, in case they became entitled to it, their deed was
delivered to plaintiff; and, being in possession, the plain-
tiff began operations on said property.   Afterwards, hav-
ing learned that the Wasatch Mining Company made
some claim to the disputed ground, or was offering it for
sale, the plaintiff commenced this action.   The complaint,
as amended, recites the facts before stated with particu-
larity, except the fact of the defendant's receiving the
mortgage given to it as full execution of the contract on
the plaintiff's part.   It avers that the lands in dispute were
included in the description in the contract between plain-
tiff and defendant by adopting the description in the
Jennings' contract, and that it was intended to be so in-
cluded, and that by the mistake and inadvertence of
the plaintiff, and the fraud and concealment of the de-
fendant, the deed was so drawn as to exclude it.   The
defendant filed an answer and cross-complaint, denying
that in making the contract and deed it was the inten-
tion to include the disputed property, and denying that
it was included in the terms of the contract; but that,
on the contrary, the whole negotiations were only for
the property outside of the disputed property, and avers
the facts relating to the giving and receiving of the
mortgage, and avers that, by the giving of the mortgage
covering and describing the property as described in the
deed, the plaintiff is estopped.   A trial was had in the
district court on these pleadings, and a decree entered for
the plaintiff.

The defendant insists that the complaint does not state
a case entitling the plaintiff to any relief, and that there-
fore the decree should be reversed.   The claim is that
by the terms of the contract between the parties, as set
forth in the complaint and shown in evidence, the plain-

tiff was not entitled to a deed at the time of bringing the action; that the conditions upon which the deed was to be delivered had not yet been performed; and that, if the plaintiff relied upon the fact that the defendant had accepted other conditions than those named in the contract as a fulfillment thereof on its part, this agreement should have been specifically set forth in detail. The complaint does aver that the deed was given by the defendant in execution of the contract on its part. This would imply that the contract had either been fully performed on the part of the plaintiff or that defendant had accepted other conditions satisfactory to it in lieu thereof. The defendant did not demur, but by its answer and cross-complaint brought before the court all the facts, and no objection was taken to the evidence. Under these circumstances the defendant should have raised the question in the court below, where ample power is given to correct and amend the pleadings; and, having itself brought the facts before the court by its pleadings, and without objection gone to trial on its merits, it would be too late to raise the question for the first time in this court. *Tyng* v. *Warehouse Co.*, 58 N. Y., 308; *Marshall* v. *Ferguson*, 23 Cal., 66. The facts, as stated in the answer and cross-complaint and shown by the evidence, conclusively show that the written contract between the parties was not annulled or a new one substituted, but that it was attempted to be executed; the defendant simply accepting other conditions than those stipulated in its favor, and attempting to execute the contract on its part by delivering the deed as provided therein, substantially as averred in the complaint. A party to a contract may always dispense with the performance of a condition in his favor, and when this is done it is the same as though the thing dispensed with had been done: 1 Add. Con., sec. 324, *Jones* v. *Barkley*, 2 Doug., 684. We do not think the objection is well taken.

The next question for our consideration is as to whether, by the terms of the contract between the parties, the disputed premises were included. It will be remembered that this contract for a description of the premises to be conveyed referred to and adopted the Jennings contract.

That contract consisted of the written undertaking, and deed accompanying it, the undertaking referred to, and adopting the description in the deed. Where a grant of property refers to another instrument for a description of the property granted it is regarded as of the same effect as though the description in the instrument referred to were copied into the grant: 3 Washb. Real Prop., pp. 458–460, secs. 54, 55; *Vance* v. *Fore*, 24 Cal., 436; 2 Devl. Deeds, sec. 1020. The contract is therefore to be construed as though the description contained in the Jennings deed was written into it. That deed first describes the property definitely and minutely by metes and bounds, and includes the property in dispute, and as a further description describes it as " Mineral Entries Nos. 87 and 88, lots 40 and 41, and patented as the ' Walker and Walker Extension' and 'Buckeye Mining Claims.' " Mineral entries Nos. 87 and 88, lots 40 and 41, include the land in controversy. The Walker and Walker extension and Buckeye mining claims, as patented, do not include it. The latter description is therefore indefinite, uncertain and contradictory. In making the description in this deed, no doubt, the parties did not have in mind the error in patenting a part of these claims to the owners of the Pinyon and Pinyon extension claim and the consequent difference between the claims as located and as patented. When a grant contains two descriptions of the same property, and one is complete, definite and intelligible, and the other is indefinite, contradictory and uncertain, in construing the grant, the former will control: 2 Devl. Deeds, sec. 1038; *Driscoll* v. *Green*, 59 N. H. 101; 2 Devl. Deeds, sec. 1041. Another rule of construction is that where a grant contains an uncertain description, or it contains two descriptions which do not coincide, that construction most favorable to the grantee will be adopted: 3 Washb. Real Prop., pp. 418, 420, secs. 32, 33. With the aid of these elementary rules of construction, we have no doubt that the contract, by its terms, covered the whole land, including the land in question; and it is equally clear that the deed sought to be reformed does not convey the lands in dispute, as provided by the contract. The defendant

claims that, notwithstanding this, no reformation of the deed should be decreed, because—*First,* all the negotiations between the parties relative to the purchase and sale were only as to the lands aside from those in dispute, and was carried on with reference to that only; *second,* that it was not intended by the parties to include, either in the contract or deed, the disputed premises; *third,* that the plaintiff accepted the deed, knowing that it did not include the disputed grounds, and gave back a mortgage adopting that description. If these propositions were established it would no doubt be good cause for withholding relief; but we think the testimony establishes the following propositions beyond reasonable doubt: *First,* that all the negotiations between the parties, up to the time the contract was made, were with reference to the entire property, including that in dispute, and were so understood by both parties: *second,* that it was intended by both parties to include the disputed premises in that contract; *third,* that it was the intention of the plaintiff, at the time of receiving the deed, to have the disputed premises conveyed to them as provided in the contract, and it was their understanding that the deed did so convey it; *fourth,* that this intention and understanding were well known to the defendant at the time of executing and delivering the deed.

The testimony shows that the property (including that in dispute) was all the property owned by the defendant, and had always been known and commonly designated as the "Walker and Walker Extension" and "Buckeye Mining Claims;" that the discovery points of both claims were within the disputed grounds; that maps and plats were used by the parties in their negotiations plainly indicating this; that the price agreed upon both with the Jennings party and with defendant was at the rate of five dollars per share of the capital stock of defendant, and this capital stock represented the entire property. In the negotiations the property was often referred to as the property in litigation in the case of the Wasatch Mining Company against Jennings, and it is argued by the defendant that that case only involved the title to the prop-

erty outside of the property in dispute; but we have no doubt that in these negotiations all the parties regarded this entire property as being in dispute in that case. The reference of the parties to it was not with reference to the technical legal attitude of the case, but as to what was involved in the litigation, and this property was so involved. It is said that the defendant and its officers did not know at the time the contract was made what the particular description was in the Jennings contract, to which they refer, never having seen it. This may be true but the reference to it, in ignorance of its provisions, can only be explained upon one theory; that, intending to convey the entire property owned by defendant, the description was immaterial so far as it was concerned. The fact, as testified by Woodmansee and other directors of the defendant, that the price was $50,000, deducting the shares of stock already owned by plaintiff, leaving $42,-500 to be paid, conclusively shows what property was being bought and sold. These shares of stock represented an interest in all the property. In the dealings between the parties this was considered as so much of the property respecting which they were negotiating as already belonging to the plaintiff, and that they were dealing with respect to the balance thereof; and hence the provision in the contract that these shares should not participate in the distribution of the $42,500. There is no doubt that the plaintiff and its officers had not in mind (if they ever knew) the mistake in originally patenting these claims and the consequent distinction between the claims as located and as patented; and if the defendant, taking advantage of their ignorance, and concealing this fact, has imposed upon them a deed which does not convey what they purchased, it is proper that the deed should be so reformed as to include it. 2 Pom. Eq. Jur., pp. 343, 344, sec. 870; 1 Devl. Deeds, sec. 152; Bisp. Eq. marg. p. 459; *Wellas* v. *Yates,* 44 N. Y., 525. The judgment of the district court should be affirmed.

ZANE, C. J., and BOREMAN, J., concurred.