By the Court.—Ingraham, J.
An examination of the testimony in this case has satisfied us that there is evidence that the plaintiffs made an offer to Beasley, who assumed to act on behalf of the defendant, to do the work at $1.70 per square yard; that this offer was accepted by Beasley, assuming to act for the company ; that Beasley undertook to write out the contract to be executed to carry out such agreement ; that in writing out that contract he inserted “running yard,” in place of “ square yard”; that when he read the contract to plaintiff, he read it “ square yard; ” that plaintiff signed the contract and performed the work in the belief that the contract, as executed by him, read “ square yard”; and that he was induced to sign the contract and go on with the work because of the fact that Beasley read over the contract to him; as containing the words “ square *523 yard.” The plaintiffs who signed this contract expressly so testified, and the contracts and letters are all in Beasley’s handwriting. The evidence to contradict this evidence is not at all satisfactory. One witness, who swears to a conversation with Beasley at the time, says repeatedly, that it was one dollar and seventy cents a running “ foot” until his attention is called to it, when he corrects his answer so as to say “yard.” This is not mentioned as showing that the witness intentionally testified falsely, but to show how easily a witness may be mistaken in testifying to a conversation that took place nearly a year before evidence of such conversation is given. It may be remarked of Mr. Moore’s testimony, that he swore positively that the contract was signed by plaintiffs and himself at the same time ; that plaintiffs were present when the contract was read by Beasley, who read it “running yard.” , All this he remembers positively, yet the two letters written by Beasley to the plaintiffs show that he is mistaken.
It is clear that plaintiffs signed the contract on July 3rd, and Mr. Moore so testifies, yet, on July 5th, Beasley writes plaintiffs a letter in which, after speaking of some facilities that plaintiffs would have to do the work, says : “ So the officers of the railroad company want you to get to work and do the paving as soon as possible * * * The president of the railroad company will have the contract ready to-morrow, when it will be sent to you,” and on July 7th, 1888, it was sent to plaintiffs by mail. It is clear from these letters that the contract was not signed by Mr. Moore first, and afterwards by the plaintiffs.
The testimony of Mr. Arents is entirely consistent with plaintiffs’ story, and it is evident that at the time he was present the contract was drawn up and signed by plaintiffs. Mr. Arents does not state that *524 he stayed in the room until Beasley had finished drawing up the contract or until plaintiffs left, nor does he say that the words “running yard ” were spoken, nor that Moore was then present. On the other hand the plaintiffs were making a proposition to take a large contract, the difference between “ running yard ” and “ square yard ” was very great, one of the witnesses saying that the amount to be paid would be one-third less if it was “running yard” than if it was “ square yard.” Plaintiffs had made an estimate as to what they would do the work for, and it is hardly conceivable that they should make such a mistake. Considering the whole testimony, the probabilities are strongly in favor of the truth of the plaintiffs’ story.
Nor do I think that the defendant can escape responsibilities for the acts and representations of Beasley. He was their cashier, was engaged in selling the bonds of the corporation, received the income of the road and paid its bills. He had been expressly authorized by the president of the company to obtain bids for doing this work, and what he did in obtaining such bids he did as agent of the company. If, therefore, as such agent, he either fraudulently or by mistake inserted in the written bid the words “ running yard,” when in fact the real bid that the plaintiffs made was for doing the work by the “ square yard,” such act was the act of the company; and when on the basis of the written bids so obtained, the same person prepares a contract in which he again inserts the words “ running . yard ” and reads it to the plaintiffs as “ square yard,” and induces plaintiffs to sign it, supposing it contained the terms of the original oral bid, and without delivering a copy of the contract as so prepared induces the plaintiffs to go on and commence the work, and the company accepts such contract and accepts the work when completed, they cannot *525 say that they supposed their agent was honest and careful, and so throw the loss occasioned by either the dishonesty or carelessness of their agent on the plaintiffs.
The reformation of a contract will be decreed where either there is a mutual mistake—that is a mistake common to both parties, or where there is a mistake on one hand and a fraud on the other. Welles v. Yates, 44 N. Y. 525.
In Bryce v. Lorillard Ins. Co., 55 N. Y. 243, the rule is stated “ The mistake which will warrant a court of equity to reform a contract in writing, must be one made by both parties to the agreement so that the interests of neither are expressed in it, or it must be the mistake of one party by which the intentions have failed of correct expression, and there must be fraud in the other party in taking advantage of the mistake and obtaining a contract with the knowledge that the one dealing with him is in error in regard to what are its terms.”
Whether Beasley made a mistake in inserting “running yard ” and read it to plaintiffs as “ square yard,” and so induced them to sign it, or did it intentionally, the company, by the original authority given to him and by its ratification of his action by accepting the contract and the work after it was completed, are responsible for his acts, and the court was justified in decreeing a reformation of the contract.
I think the findings of fact are sufficient to support the conclusions of law ; but conceding that the fact as to the fraud of the defendant’s agent is not expressly found, the rule “that, in the absence of express findings of fact to sustain the judgment, the court may look into the testimony, and if there be evidence which will support the conclusion of law, it may infer that there was a finding of fact by the judge or referee, though not expressed,” Marvin *526 v. Brewster Iron Mining Co., 55 N. Y. 547, applies.
The exceptions taken to the admission of evidence have been examined, but we do not think that they require a reversal of the judgment.
The judgment appealed from should, therefore, be affirmed with costs.
Sedgwick, Ch. J. concurred.