# MARY WALKER

## *v.*

## ANNIE ESTELL BOURGEOIS and ANDERSON BOURGEOIS, her husband.

### [Decided August 28th, 1917.]

1. Evidence *held* to warrant reformation of a deed on the ground of fraud.

2. Gross inadequacy of price is convincing evidence of fraud.

3. It is immaterial whether the defendant is principal or agent in perpetrating the fraud, since the principal cannot take advantage of the fraud of an agent.

On pleadings and proofs.

*Mr. Samuel Craig Cowart,* for the complainant.

*Messrs. Bolte, Sooy &. Gill,* for the defendants.

·LEWIS, V. C.

The bill in this case is filed to compel the correction and reformation of a certain deed wherein it is defective either by reason of fraud, mistake or misrepresentation, and for an accounting of the proceeds of any sale of a portion of the premises conveyed.

The original bill also prayed that the complainant might be decreed to have a perfect title in the tract of three thousand and seventy-two acres and ninety-seven one-hundredths of an acre.

Upon demurrer, the prayer of the bill, wherein it sought to quiet the title was stricken out, and the theory upon which the defendant has tried the case is, that unless the complainant shows fraud, misrepresentation or mutual mistake, then the bill must be dismissed.

The bill of complaint was filed by Mary Walker, the original complainant, on April 17th, 1911. Mrs. Walker died testate on October 6th, 1911, and by her will dated December 10th, 1897, she devised the tract of land containing three thousand and seventy-two acres and ninety-seven one-hundredths of an acre in the township of Weymouth, county of Atlantic, and State of New Jersey, to her executor, Samuel C. Cowart, in trust, to sell the same and divide the proceeds of sale and distribute the same to certain devisees therein mentioned, viz., to Amelia H. Hanthorne, George W. Hanthorne and John Hanthorne one equal half share of the net proceeds of the sale of said lands; and to Joseph Wolfe and Georgie Wolfe, the other equal one-half part of the net proceeds of the sale of said lands.

The executor and these devisees have been substituted as complainants in the case since the death of Mrs. Walker.

The grantee named in the deed was Rebecca S. Estell, mother of the defendant, Annie Estell Bourgeois, and mother-in-law of the defendant, Anderson Bourgeois, and the deed is dated October 1st, 1894, and was acknowledged by Mrs. Mary Walker on March 9th, 1895, before Anderson Bourgeois, one of the de-

fendants, who admits that he also drew the deed and prepared the description in the same.

The testimony shows that Mrs. Mary Walker owned a tract of land consisting of three thousand and seventy-two and ninety-seven one-hundredths of an acre in fee simple; and she also owned an undivided one-quarter interest in fee-simple in a tract of land known as the Frederick Steelman tract, consisting of about two thousand nine hundred acres, adjoining and lying to the south of the three thousand and seventy-two and ninety-seven hundredths-acre tract.

The three thousand and seventy-two and ninety-seven hundredths-acre tract came to her by partition of the land of John P. Walker, deceased, who was her husband's brother, and who died intestate. This tract of land was partitioned to her by the orphans court of Atlantic county over thirty-seven years ago, her husband having devised all his real estate to her on his death, which took place over thirty-eight years ago.

The other tract mentioned consisted of two thousand seven hundred and fifteen acres, in which Mrs. Mary Walker was a co-tenant, having an undivided one-sixth interest, which would amount to four hundred and fifty-two acres.

The testimony shows that Anderson Bourgeois purchased as the agent of his mother-in-law the whole of the two thousand seven hundred and fifteen-acre tract, and the complainant claims that he dishonestly and fraudulently included in the deed, which he himself drew, a description which included six hundred and twenty-six acres of land which belonged to Mrs. Walker separately in fee, viz., to the three thousand and seventy-two-acre tract, which she failed to discover until 1909.

The description in the deed by metes and bounds covers the six hundred and twenty-six acres already mentioned, but the description of the land is followed by the following recital:

"Being all the right, title and interest of the said party of the first part of, in and to the said land or premises situate in the township, county and state aforesaid, which they are entitled to under the will of said Frederick Steelman, aforesaid, the whole being property heired by the grantors from John P. Walker, deceased."

The other cotenant who signed the deed had no interest whatever in the six hundred and twenty-six acres, and leaving out the metes and bounds set forth in the deed there can be no doubt that the six hundred and twenty-six acres would not have passed by the deed.

The question for the court to pass upon, therefore, is whether Mrs. Walker intended to convey the six hundred and twenty-six acres, or whether that was included in the description by mutual mistake, or whether Anderson Bourgeois inserted the six hundred and twenty-six acres fraudulently, he, undoubtedly, being a very smart, keen business man, thoroughly acquainted with such business; and she, on the other hand, being, as I am convinced, a very simple-minded old lady.

The correspondence between Anderson Bourgeois and Mrs. Walker shows that in purchasing this tract of land he represented to her that he was buying only her undivided share in the Frederick Steelman tract, and he did not in any of this correspondence intimate to her that he was purchasing any part of her separate Walker tract, and the agreement which he signed and sent to her for her to execute in duplicate, was also a representation to her that he was only purchasing her undivided share of the Frederick Steelman tract and not any part of her three thousand and seventy-two-acre tract.

The bill alleges that Anderson Bourgeois agreed to give Mrs. Walker $2 per acre for her undivided share of the Frederick Steelman tract, but that he only paid her $200 for all her interest in the lands conveyed.

The complainant's undivided interest in the Frederick Steelman tract amounted to about four hundred and fifty-two acres, and the complainant claims that under the agreement she should have been paid at least $900 instead of $200 or $250.

In regard to that contention of the complainant, it appears that the reason for selling the tract at such a low figure is that there had been some controversy as to who were the heirs of Frederick Steelman, and as to the quantity of the shares of the cotenants, and as to the number of the cotenants, and the parties who signed the deed now in suit were willing to sell at a very low figure in order to avoid the cost of partition proceedings.

It may be mentioned at this point that Anderson Bourgeois also obtained deeds concerning the same tract from a number of other cotenants (the Frederick Steelman tract). It appears that Anderson Bourgeois did not get all the cotenants to convey away their interest in one deed, although, of course, he might have followed that course.

I am inclined to believe that Mary Walker intended to sell her undivided interest in the Frederick Steelman tract for the consideration which was paid to her, notwithstanding that I think Mr. Bourgeois made a most excellent bargain, and that will be my finding in respect to that.

In regard to the six hundred and twenty-six acres that she owned individually in fee simple, that is a very different proposition.

It is shown that in 1892, two years before the date of the deed, Anderson Bourgeois and his wife were agreeing to purchase from Mrs. Walker at the price of $4 per acre, and which the defendants and Rebecca Estell were actually arranging to include with other lands in a sale to Daniel L. Risley at $5 per acre.

Two years after Mrs. Walker acknowledged the deed, she made her will, and devised the tract of three thousand and seventy-two acres, the six hundred and twenty-six acres being a part thereof, thus indicating that she did not know she had conveyed any part of this tract. She also paid the taxes right along up to the time of her death in 1911. The property was wild land, and there was nothing to show that anyone else claimed to have an interest in it, except the deed, and I am quite satisfied that she knew nothing about metes and bounds.

I am fully satisfied that Mrs. Walker had not the faintest idea that she was conveying the six hundred and twenty-six acres by this deed, and the gross inadequacy of the consideration, to my mind, is convincing evidence of fraud, especially taken in connection with clear evidence of imposition and actual fraud practiced by Mr. Bourgeois on Mrs. Walker, who undoubtedly placed the utmost confidence and reliance in him, and even trusted him to draw the deed. It is quite clear to my mind that none of the other cotenants who also joined with Mrs. Walker in signing

the deed had any idea that any part of Mrs. Walker's separate property, in which they had no interest, was being conveyed, and Mr. Bourgeois must have known it, as he was a man of large experience and well acquainted with the properties.

"To reform a contract, and then enforce it in its new shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. Hence, in order to justify a decree for reformation in cases of pure mistake, it is necessary that the mistake should have been mutual. Where the mistake has been on one side only, the utmost that the party desiring relief can obtain is rescission, not reformation. The case is, of course, different, if any element of fraud exists; for it has been properly held that where there is a mistake on one side, and fraud on the other, there is a case for reformation." *Welles* v. *Yates, 44 N. Y. 525*; *Hitchens* v. *Pettingill, 58 N. H. 386.*

"To warrant reformation in the absence of fraud or imposition there must be mutual mistake." *Green* v. *Stone, 54 N. J. Eq. 387.*

The question as to whether Mrs. Rebecca S. Estell was a principal and Anderson Bourgeois was merely her agent, or whether Anderson Bourgeois was the principal and Mrs. Rebecca S. Estell merely a trustee, can make no difference, as she could not take advantage of her agent's fraud.

I will, therefore, advise a decree providing for the reformation of the deed in accordance with the above views, and providing, further, for the payment by the defendants to the complainants of the value of those portions of the premises which have come into the hands of innocent purchasers for value without notice, with interest upon such amounts, compounded at six per cent. annually.

As to the value of these lands which have come into the hands of innocent purchasers the testimony shows that by the defendant Bourgeois's offer made about two years before the time of the conveyance, they were of the value of $4 an acre.

I think, therefore, the value of these lands was at least that

amount, and if the complainants are satisfied that that represents the fair value of these lands I will fix the amount of the decree upon that basis. If they are not so satisfied, then I will refer it to a master to take testimony as to the actual value of the lands at the time of the conveyance to Mrs. Estell.

I will, on application, settle the details of the decree.