EMANUEL METZGER, as Receiver of the KINGSTON CHEMI-
CAL MANUFACTURING COMPANY, Respondent, v. ÆTNA
INSURANCE COMPANY, Appellant.

Contracts — rescission — reformation of contract — fire
insurance — builder's risk — when builder's risk slip attached
to fire insurance policy limits liability to time building is in
course of construction.

1. While in equity a rescission of a contract may be adjudged on
the ground of a unilateral mistake in its contents, in order that a
reformation may be adjudged, there must be mutual mistake or inad-
vertence or the excusable mistake of one party and fraud of the other.
There must have been a meeting of the minds of the contracting parties
concerning the agreement, or agreement which the court is asked to
declare existent.

2. Ignorance through negligence or inexcusable trustfulness will
not relieve a party from his contract obligations. He who signs or
accepts a written contract, in the absence of fraud or other wrongful
act on the part of another contracting party, is conclusively presumed
to know its contents and to assent to them and there can be no evidence
for the jury as to his understanding of its terms.

3. An insurance policy, issued June 9, 1916, insured for the term of
one year from that date a factory building in process of erection.
Attached to and a part of the policy when delivered was this slip or
rider: "Builders Risk Clause. It is understood and agreed that this
policy covers the property described herein only while the building is
in process of erection and completion and not as an occupied building."
Upon the outside of the folded policy, as delivered, appeared the
words, "Expires June 9, 1917." The insured's president, at the
delivery, said to the defendant's agent, "This policy is written for a
year," and received the reply, "Yes." The building was completed
in July, 1916. In October, 1916, it had become equipped with machin-
ery. The building was destroyed by fire February 5, 1917. Before
that date the agents of the insurer gave notice of cancellation of the
policy. In this action brought to recover on the policy the defendant
denied liability on the ground it was not an insurer. Held, that
the facts do not constitute or disclose a liability on the part of
the defendant. The two stipulations in the policy were, obviously,
to be read together and said the insurance shall exist for one
year unless at a time within the year the erection of the build-

ing should be completed and its operation entered upon, at which time it shall cease to exist and all the liability under the policy shall cease.

> *Metzger* v. *Ætna Ins. Co.*, 186 App. Div. 627, reversed.

(Argued December 3, 1919; decided January 6, 1920.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 14, 1919, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

*John N. Carlisle* for appellant. There is absolutely no evidence upon which to grant reformation of the policy. The complaint was properly dismissed. (*Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *Hay* v. *Star Ins. Co.*, 77 N. Y. 235.) The rule is that a party seeking reformation must prove that there was a mutual mistake by evidence that is clear, positive and convincing. (*Christopher St. Railway Co.* v. *Twenty-third St. Ry. Co.*, 149 N. Y. 51; *Southard* v. *Curley*, 134 N. Y. 148; *Reed* v. *Whitehead*, 1 App. Div. 192; *Salmon* v. *N. B. & M. Ins. Co.*, 215 N. Y. 214; *Dougherty* v. *Lion Ins. Co.*, 41 Misc. Rep. 285; 95 App. Div. 618; *Cary Mfg. Co.* v. *Merchants Ins. Co.*, 42 App. Div. 201; *Kenyon Paper Co.* v. *Lloyds*, 124 App. Div. 886; *Bryce* v. *Lorillard Fire Ins. Co.*, 55 N. Y. 240; *Mead* v. *Westchester F. Ins. Co.*, 64 N. Y. 455; *Thompson* v. *Phœnix Ins. Co.*, 136 U. S. 287.)

*Joseph M. Fowler* for respondent. The testimony of the plaintiff raised an actual issue of fact as to whether there was a bilateral mistake of the parties in respect of whether the so-called " builder's risk clause " was a term of the policy limiting the duration thereof. The nonsuit, therefore, was error. (*Kraus* v. *Birnbaum*, 200 N. Y. 130; *Faber* v. *City of New York*, 213 N. Y. 411; *Lindenthal* v. *G. L. Ins. Co.*, 174 N. Y. 76.) The presence of the so-called

"builder's risk clause" rider upon the policy did not as matter of law limit the duration of the policy to the period during which the insured building was under construction. (*Farwell* v. *Home Ins. Co.*, 136 Fed. Rep. 93.)

COLLIN, J. The action is to reform a policy of fire insurance, issued by the defendant to the Kingston Chemical Manufacturing Company, and to recover upon the policy as reformed. The trial justice, at the close of the evidence in behalf of the plaintiff, ordered the dismissal of the complaint. The Appellate Division reversed the consequent judgment and granted a new trial.

The direct evidence, and the reasonable inferences from it, most favorable to the plaintiff, would have permitted the jury to find as the facts: The policy, issued June 9, 1916, insured for the term of one year from that date, against fire, in the sum of twenty-five hundred dollars, a factory building in process of erection. Attached to and a part of the policy when delivered was this slip or rider: "Builders Risk Clause. It is understood and agreed that this policy covers the property described herein only while the building is in process of erection and completion and not as an occupied building and that all liability under this policy shall cease when the building shall become occupied in whole or in part; except that if the building is to be a manufacturing plant machinery may be set up and tested." The policy was delivered by the agent of the defendant to the president of the insured, who, at about its date, had told the agent that the building was inclosed and to write a policy for twenty-five hundred dollars at present. Prior to the delivery there were no other negotiations and no agreement between the parties. Upon the outside of the folded policy, as delivered, appeared the words, "Expires June 9, 1917," and the insured's president, at the delivery, said to the defendant's agent, "This policy is written for a year," and received the reply,

" Yes," and the statement, " he (the agent) had to write it at $1.25, which is a builders' risk rate, as the building was not identified by the Underwriters, but he would try to get the Underwriters to put a rate on it and he would let me know." He paid the premium of thirty-one dollars and twenty-five cents, and without opening the policy put it in the safe. The building was completed in July, 1916. In October, 1916, it had become equipped with the machinery and the company applied for and received a second policy in the sum of fifteen hundred dollars from a company other than the defendant, represented, however, by the same persons as agents. In October or November, 1916, the agents of defendant told the insured's president that upon the policy of June 9 a premium rate, to take the place of the builders' risk rate, less than five dollars on each one hundred dollars, could not be procured, and wrote him under date of December 16, 1916, as follows: " Enclosed please find endorsements which will be necessary to attach to policies of insurance which we have written for you. You will see that the rate is increased a very large amount, however we assume you will continue the policies until you are able to put in the sprinkler system in your building as it would not pay you to be without insurance. We are protecting your interest and await your further pleasure." The inclosed indorsement pertinent to the policy of June 9 fixed the amount, term and expiration identically with those in the policy and the rate in the additional sum of ninety-three dollars and seventy-five cents, which the insured refused to pay. The agents said they would have to cancel the policy. There ended the transactions between the parties. The insured building was destroyed by fire February 5, 1917. The insured duly served notice and proofs of loss. The defendant denied liability upon the ground it was not an insurer of the building. The insured's president was and had been for many years a lawyer and had had an insurance agency of his

own after his admission to the bar. He knew the Underwriters Association made the premium rates.

Those facts do not constitute or disclose a liability on the part of the defendant. The policy, in and through the indorsement slip or rider, in form stipulated that it was in force and effect only while the building was in process of erection and completion and the machinery placed and tested, and that all liability under it should cease when the building shall become occupied in whole or in part for operating. The stipulation was in purpose and intendment a potential qualification or limitation of the expressed existence of the insurance through the term of one year. The two stipulations were, obviously, to be read together and said, the insurance shall exist for one year unless at a time within the year the erection of the building should be completed and its operation entered upon, at which time it shall cease to exist and all the liability under the policy shall cease. Expressed conditions within a policy terminating or forfeiting the insurance within the term prescribed in the policy are neither novel nor unusual. The legality of that involved in the instant case is not and cannot be questioned. (Insurance Law [Cons. Laws, chapter 28], section 121.) Its language and meaning are unambiguous, unequivocal and not susceptible of interpretation. There cannot be applied to it the rule that courts are averse to forfeitures and are cautious in enforcing them. If the insured obtained or held a mistaken view or belief concerning the agreements of the policy, the fault or negligence of its president and representative was the cause. A mere reading of the policy would have made him and the plaintiff know the agreements the plaintiff was accepting and entering into. To hold that a contracting party, who, through no deceit or overbearing inducement of the other party, fails to read the contract, may establish and enforce the contract supposed by him, would introduce into the law a dangerous doctrine. Of course,

the doctrine does not exist. It has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. "He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms. (*Breese* v. *United States Tel. Co.*, 48 N. Y. 132; *Hill* v. *Syracuse, Binghamton & N. Y. R. R. Co.*, 73 N. Y. 351; *Watkins* v. *Rymill*, 10 Q. B. D. 178; *Moran* v. *McLarty*, 75 N. Y. 25; *Boylan* v. *Hot Springs Railroad Co.*, 132 U. S. 146; *Standard Manufacturing Co.* v. *Slot*, 121 Wis. 14; *Germania Fire Insurance Co.* v. *Memphis & Charlestown R. R. Co.*, 72 N. Y. 90; *Rice* v. *Dwight Mfg. Co.*, 2 Cush. 80.) This rule is as applicable to insurance contracts as to contracts of any other kind. (*Commonwealth Mutual Fire Ins. Co.* v. *Knabe & Company Manfg. Co.*, 171 Mass. 265; *Bostwick* v. *Mutual Life Ins. Co. of New York*, 116 Wis. 392; *Fidelity & Casualty Co. of N. Y.* v. *Fresno F. & Ir. Co.*, 161 Cal. 466; *Parsons, Rich & Co.* v. *Lane*, 97 Minn. 98; *Monitor Mutual Fire Ins. Co.* v. *Buffum*, 115 Mass. 343.) The fact that the acceptor does not sign the contract is, of course, immaterial. (*Quimby* v. *Boston & Maine R. R. Co.*, 150 Mass. 365; *Vogel* v. *Pekoc*, 157 Ill. 339.) There are exceptions to the general rule (*Watkins* v. *Rymill*, 10 Q. B. D. 178; *McMaster* v. *New York Life Ins. Co.*, 183 U. S. 25; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235; *Flickinger* v. *Farmers Mutual Fire & L. Ins. Assn. of Story County, Iowa*, 136 Iowa, 258; *Salom* v. *Farm Property Mutual Ins. Assn. of Iowa*, 168 Iowa, 521) which do not enter into the instant case. It is manifest that the responsive statement of the defendant's agent at the delivery of the policy that it

was written for a year could not constitute a fraud or wrongful act or relieve the company from the acceptance of it. Indeed, the plaintiff has not made and does not make a claim of contrary effect. He asserts a mutual mistake in attaching the slip or rider. Conditions forfeiting the insurance are, as we have said, neither novel nor unusual. Illustrations in judicial decisions are many. We refer to *Nelson* v. *Traders' Ins. Co.* (181 N. Y 472); *Rosenstein* v. *Traders' Ins. Co.* (79 App. Div. 481), and *Wilcox* v. *Continental Ins. Co. of N. Y.* (85 Wis. 193). It is common knowledge and experience that they do not, in ordinary understanding or expression, destroy the prescribed term as that for which the policy is written. With those in the policy, the insured and insurer still say it is written for one year or three years or as the case may be. While in equity a rescission of a contract may be adjudged on the ground of a unilateral mistake in its contents, in order that a reformation may be adjudged, there must be mutual mistake or inadvertence or the excusable mistake of one party and fraud of the other. There must have been a meeting of the minds of the contracting parties concerning the agreement, or agreements, which the court is asked to declare existent. (*Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40.; *Bidwell & Banta* v. *Astor Mutual Ins. Co.*, 16 N. Y. 263; *Bryce* v. *Lorillard Fire Ins. Co.*, 55 N. Y. 240; 21 Halsbury, Laws of England, pp. 16–20.) It is manifest, in virtue of what we have written, there was not a mistake on the part of the insured concerning the terms and conditions of the policy. It is manifest from the evidence there was not a mistake on the part of the insurer. It, by its agent, wrote and delivered the policy. It expressed in it, in language which it could not have misunderstood, the contract it intended and made. The policy as written and delivered must, then, be deemed and taken as the contract of the parties.

27

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in the Appellate Division and this court.

HISCOCK, Ch. J., CHASE, HOGAN, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.