DOROTHY M. WRIGHT, Plaintiff, v. AMERICAN EQUITABLE ASSUR-
ANCE COMPANY OF NEW YORK, Defendant.*

Supreme Court, New York County, January 31, 1928.

Insurance — fire insurance — policy, issued to plaintiff, permitted prem-
ises to be vacant for period not exceeding nine months and ten days
in each policy year — premises were vacant in excess of said period —
plaintiff not entitled to reformation of policy — agent who procured
policy not guilty of negligence — insurer not liable.

Plaintiff, to whom was issued a fire insurance policy containing a clause per-
mitting the premises to be vacant for a period not exceeding nine months and
ten days in each policy year, is not entitled to have said policy reformed so as
to enforce collection thereunder, where it appears that some days in excess
of the nine months and ten days, permitted by the policy for occupancy, expired,
when the premises burned, particularly since plaintiff's claim, that she requested
the agent to obtain a policy which would permit unoccupancy for an indefinite
period, was not substantiated by the evidence.

The agent, who procured the insurance for plaintiff, cannot be said to have been
guilty of negligence or fraud, in the manner in which he acted in renewing the
insurance, where he was merely requested to obtain a renewal of the policy
in force.

Even if the agent violated the instructions given to him by plaintiff, his relation-
ship to the broker, for whom he worked, was such as to constitute him an
ordinary broker or solicitor of insurance, and in no way could the defendant
be bound by his negligence or mistakes, particularly where there is no evidence
showing that he ever told the broker that he had been directed or instructed to
obtain a policy to cover indefinite unoccupancy.

Plaintiff's claim that she never saw the policy as and when issued is no defense,
because the perusal of its provisions would have revealed the conditions upon
which the insurance was issued.

ACTION to reform fire insurance policy and to recover damages
thereunder.

——————— ————————, for the plaintiff.

——————— ————————, for the defendant.

MAHONEY, J. This plaintiff seeks to reform a policy of fire
insurance issued by the defendant, and to then have judgment
against the defendant for the sum of $19,000 damages, which she
claims she sustained by reason of the destruction of the premises
mentioned in the policy referred to in the complaint. In the
complaint it is alleged that on November 10, 1924, the defendant
issued and delivered to plaintiff its policy of insurance No. 150391,
in the standard form, insuring the premises owned by plaintiff in
Woodmere, L. I., for the sum of $19,000; that the policy of insurance
contained, among other things, the following statements or clauses:

* Affd., 223 App. Div. 877.

" Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage occurring. * * * Unoccupancy: (f) While a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of ten days; privilege granted * * * (4) to be occupied without limit of time provided that furniture remains in dwelling; and (5) to be vacant for a period of not exceeding nine consecutive months in any one policy year in addition to the ten days permitted by the policy."

The policy as issued covered a term of three years, from December 7, 1924, at noon, to December 7, 1927, at noon. The fire occurred October 19, 1925. Defendant refused to pay under the policy for the reason that some days in excess of nine months and ten days, permitted by the policy for unoccupancy, had already expired at the time the fire occurred.

The plaintiff in her complaint alleges that the paragraphs of the policy of insurance above quoted were never brought to her attention until after the fire occurred; that plaintiff neither directly nor indirectly consented to said statements or clauses and did not know of the existence thereof until after the fire; that said statements or clauses were inserted in said insurance policy in violation of the terms of the agreement made between plaintiff and the defendant, and in violation of the directions given by plaintiff to defendant's agents with regard to the issuance to her of said insurance, and were inserted by mistake —" on the part of both plaintiff and defendant, or, if not by mistake on the part of the defendant, then defendant, with intent to defraud the plaintiff, caused the said statements or clauses to be inserted in and become a part of the said policy."

It appears from the testimony in the case that plaintiff claims she engaged one Prime to reinsure her house in Woodmere. She was about to move into New York city, having taken a five-year lease of an apartment in the borough of Manhattan, and she claims she told Prime that she wanted such a policy as would protect her against fire in case her house was unoccupied for an indefinite time. The evidence shows that Prime, a solicitor for insurance, was a social friend of the plaintiff and her husband, and frequently visited their home. It appears to be the claim of the plaintiff that the insurance was placed by Prime through an insurance agency, viz., Hanley Ried & Co., and that the relationship of Prime to Hanley Ried & Co. and of Hanley Ried & Co. to the defendant was such as to constitute them the agents of defendant in such manner that the defendant would be bound by the acts of Prime and of Hanley Ried & Co.

In connection with the placing of the insurance in question, so far as Prime is concerned, the evidence establishes to my satisfaction

that he was a solicitor for insurance and that he placed practically all of his fire risks at the time through Hanley Ried & Co.; that whereas the office of Hanley Ried & Co. was located in Jersey City, Prime had his office in New York city; that Prime's own office expenses were paid by himself, and in no part by Hanley Ried & Co. or by defendant. The only compensation he received from Hanley Ried & Co. was obtained from such fire risks as he placed through Hanley Ried & Co., and when such a risk was placed Hanley Ried & Co. divided commissions with him. So far as Hanley Ried & Co. are concerned, it appears to be the fact that that company was the authorized agent of defendant for the purpose of issuing policies of insurance on risks located in the State of New Jersey. The company, however, did not have such authority in the State of New York, and was not a general agency for the defendant within the State of New York.

Although the evidence does satisfy me that the plaintiff did have a talk with Prime, in which she told him she was about to move to New York city for an extended period, I am not satisfied that she requested Prime to obtain for her a policy of insurance that would permit unoccupancy by herself, or any other party, of the house in Woodmere for an indefinite period. The fire for plaintiff was an unfortunate one, occurring a comparatively short time, viz., only one month and ten days, after the expiration of the nine months and ten days period. Although Prime acted in good faith, it does not appear to me that he was the most intelligent of brokers; but I cannot conclude that he was actually guilty of negligence or fraud in the manner in which he acted in renewing the insurance on plaintiff's premises. Prime testified that all he was requested to do, and all he intended to do, was to obtain for an additional three years the continuance of such form of policy of insurance as existed on the plaintiff's premises up to December 4, 1924. The policy when issued was issued by the Central Fire Agency, apparently the general agency of the defendant, with authority to issue policies of the defendant. With this concern Prime apparently had nothing to do. It is true that Hanley Ried & Co. placed most, if not all, of its fire insurance risks in New York through the Central Fire Agency and defendant company.

Even if Prime had violated the instructions given to him by plaintiff, either deliberately or through negligence, I am of opinion that his relationship to Hanley Ried & Co. was such as to merely constitute him the ordinary broker or solicitor of insurance, and that in no way could the defendant be bound by his negligence or mistakes. Furthermore, there is no evidence in this case that Prime ever told Hanley Ried & Co. that he had been directed or instructed

by plaintiff to obtain a policy of insurance to cover indefinite unoccupancy. The distinction between insurance brokers and insurance agents is well established in this State. As was said in *Allen v. German American Ins. Co.* (123 N. Y. 6, 16): " A mere insurance broker, as Noble appears to have been, cannot be converted into an agent of the insurance company, without evidence of some action on the part of the company, or of facts, from which a general authority to represent it might be fairly inferred."

And at page 15: " He certainly appears to have been nothing more than an insurance broker, soliciting insurance business, and when, upon the acceptance of the risk, he received back a policy of the company for the plaintiff, his sole office was simply to deliver it for the company, and to collect the premium. That is certainly not enough to constitute him an agent for the company, with authority to bind it retroactively, or presently, in transactions relating to the insurance. Circumstances are wholly wanting, from which we may presume the authority of an agent."

The *Allen Case* (*supra*) was quoted with approval in *Wolowitch v. National Surety Co. of New York* (152 App. Div. 14, 20), and the court at page 22 said: " The insurance broker was clearly the agent of the plaintiff for the purpose of obtaining insurance from any company he could. Acting for his principal, he was bound to disclose to defendant company the truth as he knew it as to this very material representation. I think that, notwithstanding the fact that the plaintiff may have known nothing of these rejections, as the company issued its policy relying upon the truth of the warranty, based upon the application to it, presented by the plaintiff's agent, he was bound. His agent was fully and duly authorized to obtain insurance. Therefore his acts and conduct in the prosecution of the precise agency which he was authorized to conduct, the obtaining of the policy at bar, were plaintiff's."

The general rule is again set forth in *Condon* v. *Exton-Hall Brokerage & Vessel Agency* (80 Misc. 369, 371) where it is held: " It is settled beyond controversy in this State that a broker who is employed to secure insurance is the agent for the insured and not for the company. *Northrup* v. *Piza,* 43 App. Div. 284, affd. without opinion, 167 N. Y. 578; *Morriss* v. *Home Ins. Co.,* 78 Misc. Rep. 303."

If plaintiff, as she testified, never saw the policy as and when issued, that fact was likewise unfortunate for her, because a perusal of its provisions would have revealed the conditions upon which the insurance was issued. " It has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them

or not.  Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations.  He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms.  (*Breese* v. *United States Tel. Co.*, 48 N. Y. 132; *Hill* v. *Syracuse, Binghamton & N. Y. R. R. Co.*, 73 N. Y. 351; *Watkins* v. *Rymill*, 10 Q. B. D. 178; *Moran* v. *McLarty*, 75 N. Y. 25; *Boylan* v. *Hot Springs Railroad Co.*, 132 U. S. 146; *Standard Manufacturing Co.* v. *Slot*, 121 Wis. 14; *Germania Fire Insurance Co.* v. *Memphis & Charlestown R. R. Co.*, 72 N. Y. 90; *Rice* v. *Dwight Mfg. Co.*, 2 Cush. [Mass.] 80.)  This rule is as applicable to insurance contracts as to contracts of any other kind." (*Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411, 416.)

Although the policy, in one of its paragraphs or rider heretofore referred to, permitted unoccupancy for a period of only nine months and ten days, upon proper application made, that period could have been extended.  Likewise under the terms of the policy the house could have been unoccupied indefinitely, if furniture had been permitted to remain therein.  It seems, however, that furniture was not permitted to remain in the house after plaintiff moved to New York city.  It, therefore, does not appear, in view of all the evidence, that the terms of the policy as issued were harsh, or that plaintiff was harshly treated.  It is to be regretted she never read the policy or became familiar with its terms.  I am satisfied, therefore, that there was no fraud, nor was there such a mutual mistake of fact as would justify a reformation of the policy.

" While in equity a rescission of a contract may be adjudged on the ground of a unilateral mistake in its contents, in order that a reformation may be adjudged, there must be mutual mistake or inadvertence or the excusable mistake of one party and fraud of the other.  There must have been a meeting of the minds of the contracting parties concerning the agreement, or agreements, which the court is asked to declare existent.  (*Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *Bidwell & Banta* v. *Astor Mutual Ins. Co.*, 16 N. Y. 263; *Bryce* v. *Lorillard Fire Ins. Co.*, 55 N. Y. 240; 21 Halsbury, Laws of England, pp. 16–20.)  It is manifest, in virtue of what we have written, there was not a mistake on the part of the insured concerning the terms and conditions of the policy.  It is manifest from the evidence there was not a mistake on the part of the insurer.  It, by its agent, wrote and delivered the policy.  It expressed in it, in language which it could not have misunderstood, the contract it intended and made.  The policy as

written and delivered must, then, be deemed and taken as the contract of the parties." (*Metzger* v. *Ætna Ins. Co.*, *supra*, 417. See, also, *Solomon* v. *North British & Mercantile Ins. Co.*, 215 N. Y. 214.)

While it is true plaintiff established that a fire occurred as claimed by her in the complaint, and proved to my satisfaction that she sustained damages to the extent of $19,000, I must hold, in view of the foregoing, that the cause of action alleged has not been proven by a fair preponderance of the credible testimony.

The defendant is, therefore, entitled to judgment dismissing the complaint.