MARION HALL, Respondent, *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and Another, Appellants.

Fourth Department, November 10, 1933.

*Foley & Guile [Woodward W. Guile* of counsel], for the appellant Prudential Insurance Company.

*Lee, Brennan & Bastow [Earle C. Bastow* of counsel], for the appellant Samuel Pacquette.

*Searle & Searle [Clinton Searle* of counsel], for the respondent.

CROSBY, J. In this action plaintiff seeks to have a policy of insurance, issued by defendant upon the life of her mother, reformed, and then to have judgment in plaintiff's favor for the amount of the policy. The contract is of the kind known as an industrial policy and is for the sum of $500, the premiums on which were $1.25 per week. The policy provides that, upon the death of the insured the amount of the policy will be paid " to the executors or administrators of the insured, unless payment be made under the provisions of the next succeeding paragraph." The succeeding paragraph referred to is called a " Facility of Payment " clause, and the provisions thereof, that are pertinent to this case, provide " that the said Company may make any payment * * * provided for in this policy to any relative by blood * * * of the insured, or to any person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, for his or her burial or for any other purpose," etc.

Under the " Facility of Payment " clause, expenses of administration could be avoided in a case where insured left no property and where the insurer could determine that some relative had supported the insured or paid the funeral expenses or both, and this provision must often be found to be valuable in saving useless expense. But the policy provides that the company " may," not must, pay, under the " Facility of Payment " clause, to some one other than the executor of the insured. Plaintiff does not contend that the company was bound to pay to her, under the policy as it reads, but she sought to make proof that her talk with the company's agent was to the effect that the amount of the policy would be paid to plaintiff on her mother's death. Plaintiff's testimony on that subject is unsatisfactory. So far as it is intelligible it seems to contradict plaintiff's theory of the case. Asked to tell what the agent said to her (and the talk was had in the presence of the

mother), she testified as follows: " He asked me her age and I told him 59, and he looked it up and he says, ' at *your* age it would cost *you* $1.25 a week for $500.00, which would be payable to *you*.' ' *I* thought it over and *she* says, ' Go ahead.' " It is difficult to say that plaintiff even intended to testify that the agent told plaintiff that she would receive the $500 on her mother's death. Plaintiff produced the agent as her witness and he testified as follows: " I told her [plaintiff] that she could get the $500 *provided that she paid the funeral expenses.*"

The foregoing is the entire proof supporting plaintiff's right to have the policy reformed, so as to make her the beneficiary, excepting that plaintiff again took the stand to deny the statement of her own witness, that her right to collect the insurance was said to be conditional on her paying the funeral expenses.

The undisputed testimony of plaintiff is that the policy was delivered to her, that she never read it, that she kept possession of it, paid all the premiums on it, and delivered it to the company with proof of her mother's death. It is conceded that the executor, and not the plaintiff, paid the funeral expenses.

The company paid the money to the executor of the insured, who has kept the whole amount in a special fund awaiting the result of litigation. It also appears that plaintiff made a claim for the $500 insurance money, and also for $500 more for care of her mother, against the executor. The claim was rejected, and trial of the matter in Surrogate's Court was deferred until an accounting should be had and the matter was there pending when this litigation was started.

The judgment appealed from should be reversed and the complaint dismissed. While rescission of a contract can be had for a unilateral mistake, on the theory that the minds of the parties never met, it is well settled that a contract cannot be reformed unless there was either mutual mistake, or else mistake on one side and fraud on the other, and the court reforms the contract in order to make it what the parties intended. (*Metzger* v. *Ætna Ins. Co.,* 227 N. Y. 411.)

That case is also authority for the proposition that one who accepts a written contract, perfectly clear in its terms, cannot be heard to say that he misunderstood its terms when his misunderstanding is due to his own neglect in not reading it. (See, also, *Minsker* v. *John Hancock Mut. Life Ins. Co.,* 254 N. Y. 333, and *Lake View Brewing Co.* v. *Commerce Ins. Co.,* 143 App. Div. 665; affd., 207 N. Y. 746.)

These cases also hold that evidence supporting a claim to reform a written contract must be clear and convincing. Plaintiff's evidence, in fact, her own testimony, is neither clear nor convincing.

The equities are all in favor of both appealing defendants. The company has paid every cent it owes to the one to whom it was payable by the terms of the policy, and the executor who received the money has held it in a special account subject to the order of any court having jurisdiction.

The first and second findings of fact of the trial court's decision, as well as the finding of fact appearing in the first conclusion of law, should be disapproved and reversed, and a finding of fact should be made to the effect that the policy is in the form intended and agreed upon by the parties, and the judgment appealed from should be reversed on the law and the facts and the complaint dismissed, with costs.

All concur, except THOMPSON, J., who dissents and votes for affirmance as to the reformation of the policy, in an opinion. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

THOMPSON, J. (dissenting). I find myself unable to agree with the conclusion reached by a majority of the court in this case. In my view, the judgment awarded by the trial court is amply supported by clear and convincing testimony, and should be affirmed.

Decedent, insured, was plaintiff's mother, and at the time the policy was taken out, as well as at her death, she resided with her daughter. Decedent also had seven other children, all of whom survived her. The evidence clearly establishes that the proposition which defendant's agent Spetrino advanced to plaintiff and decedent, and which was acted upon by them, was that each should buy a policy on the life of the other, the one taking out the policy and paying the premiums to be the beneficiary in such policy. The chief purpose of the agent's call was to collect premiums due on other policies of defendant on the lives of both mother and daughter, each in favor of the other. It is significant that defendant has paid the daughter the amount of a policy issued on the life of the mother, which it is obvious did not contain a facility of payment clause, and which was in existence when the agent solicited the sale of the policy in suit. The mother declined to take a policy on the life of the daughter because of her advanced years, and by reason of the further facts that the daughter had previously taken out a $500 policy on her own life for the mother's benefit, but she advised the daughter to take out a policy on *her* (the mother's) life for her (the daughter's) benefit. An application was thereupon executed by deceased insured, in which the name or description of the beneficiary, or the type of policy applied for, or to be issued, does not appear, except that in the caption to the instrument there is set

out in capital letters, " Application for Industrial Insurance in The Prudential Insurance Co. of America." The premiums were all paid by plaintiff, the policy and premium receipt book were delivered to her and remained in her custody up to the death of the insured, when defendant, through its same agent, brought blank proofs of loss to plaintiff, made them out in her name, filling in the spaces provided in accordance with answers made to questions put by him to her. By these proofs of loss it appeared that plaintiff claimed to be the beneficiary named in the policy, and that the funeral expenses were paid by the insured's estate. When the policy was produced, it was found that it was made payable " to the executors or administrators of the Insured," and that it contained a facility of payment provision. Nowhere in the record does it appear that anything was said by anybody at any time in respect to the policy being made payable " to the executors or administrators of the Insured," or that it should contain a facility of payment clause. From this testimony it is clear not only that plaintiff understood that the policy was not to be made payable to the executor or administrator of the insured's estate, but that it was to run directly to her and without condition. The evidence establishes that defendant's agent and defendant so understood and regarded the agreement, otherwise instead of obtaining proofs of loss from plaintiff, they would have gotten them of the executor.

If it be said that defendant company may not have known who bore the funeral expenses until these proofs of loss were made by plaintiff, it at any rate knew then, and in spite of such knowledge, the agent and his company accepted and filed such proofs of loss, and they did not cause further proofs to be submitted by the representatives of the deceased insured's estate. Defendants do not contend that the loss was not to be paid to plaintiff, nor do they claim, nor is there proof, that the agreement was that the loss should be paid to the representative of the decedent insured's estate. Their sole contention is that it was to be paid to the claimant " provided that she paid the funeral expenses " under the facility of payment clause in the policy. This is the testimony of defendant's agent Spetrino but it is expressly denied by the plaintiff and the court below has accepted her testimony. The defendant company is here standing to succeed upon a theory under which they have not claimed, and which finds no support in the evidence. In any event upon the proofs the policy is not the one contracted for, either from the standpoint of plaintiff's or defendants' contentions.

The majority opinion suggests that plaintiff, having omitted to read the policy, cannot be heard to say that she misunderstood

its terms. I do not so read the cases upon which it rests for this statement.

It will be noted that actual negligence is a fundament in the law of these cases. This is a question of fact, and it is quite apparent that the court acquitted this insured of any charge of negligence, because she trusted defendant and its agent and omitted to read the policy. At any rate, these are questions which make the propriety of granting relief in a given case discretionary. (*Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235, 240.) They are not rules of law which may deprive equity of its power of correction in a worthy case.

1 think a sounder and more salutary rule than the one propounded by my brethren as applicable to this case is to be found in *Lewitt & Co., Inc.*, v. *Jewelers' Safety F. Soc.*, 249 N. Y. 217), in which (at p. 223) the court said: " ' It has certainly never been announced as the law in this State that the mere omission to read or know the contents of a written instrument should bar any relief by way of a reformation of the instrument on account of mistake or fraud. It is the general rule that where a written instrument fails to conform to the agreement between the parties in consequence of the mutual mistake of the parties however induced, or the mistake of one party and fraud of the other, a court will reform the instrument so as to make it conform to the actual agreement between the parties.' " (Citing cases.)

In all the circumstances it seems to me that this court fails of grounds upon which to reverse the decision of the trial court in this case. It is fundamental that a reversal by an intermediate court on the facts will not be sustained where it does not appear that the decision of the trial court is against the weight of evidence, or that the proof so clearly preponderates in favor of a contrary result that it can be said, with a reasonable degree of certainty, that the trial court erred in its conclusions. (*Foster* v. *Bookwalter*, 152 N. Y. 166.) Unless we can say that the findings were against the weight of evidence or that the proofs so clearly make for a contrary result that there is reasonable certainty that the Special Term erred, we cannot disturb its findings. (*Hoye* v. *Bridgewater*, 134 App. Div. 255, 256.) The Appellate Division will not reverse a determination of the trial court in a suit in equity on the facts unless the proof so clearly preponderates in favor of an adverse conclusion that it can be said with reasonable certainty that the court erred in its conclusions. (*Bascombe* v. *Marshall, No. 1*, 129 App. Div. 516.)

From the very nature of things these people were not thinking of facility of payment clauses, funeral expenses or executors and administrators. This mother did not design the taking out of an

insurance policy on her life at her daughter's expense, by the terms of which the daughter must bear her funeral expenses, or that the whole loss should be paid to her executors or administrators, thus releasing and unjustly enriching, not only the insured's estate, but her seven remaining children. Nor is there evidence from which it can be inferred that the daughter believed or intended that the policy applied for was of this character, or that the agent believed that he was vending such a policy.

To the contrary, taking the application, which contains no facility of payment clause or mention or description of a beneficiary, the proofs of loss, their contents and the conduct of defendant and its agent in reference to the making and retention thereof, the policy and the beneficiary therein named, which was not agreed upon under the theory or proofs of either of the parties, the testimony of plaintiff and defendant's agent of the facts and circumstances attendant upon the sale of the policy, the payment of the premiums by the daughter, and the existence at the time of the taking out of the policy sued on of a policy in defendant for the daughter's benefit upon the life of the mother, of the very type here contended for by plaintiff, it becomes patent that the insurance intended and believed to have been effected, not only by plaintiff, but by defendant, was for the benefit of plaintiff-claimant absolutely without reduction or reserve.

The judgment against the insurance company should be affirmed, with costs.

Judgment reversed on the facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new finding made.