Harold Baer, J.
The plaintiff seeks reformation of a note, which she contends was mistakenly dated February 1, 1957 instead of February 1, 1958. On January 17, 1958, plaintiff executed and delivered a general release to the defendant as part of the settlement of the estate of their mother. She claims that on this same day she received the postdated note, and that the year was a mutual mistake of fact or a mistake by her and fraud by the defendant.
The mother died on May 9, 1957. Her estate approximated $100,000, consisting of money loaned on a note under the direction and guidance of the defendant in the sum of $85,000 and money that had been borrowed by the plaintiff and another brother, Sidney, in the sums of $10,000 and $5,000, respectively. The plaintiff and her two brothers were the executors of their mother’s estate and equal beneficiaries under her will. Plaintiff claims that on January 17, 1958, the estate having been settled, adjustments were made and it was determined and agreed that she was entitled to $20,450 as her one-third share, after charging her with prior loans and advances.
On that same day she opened an account in the Atlantic bank with the $450 and a check for $168, which she received as part of the adjustments; executed a general release to her brothers; received general releases from them; and received a note for $20,000 from the defendant. It is this note which is at issue.
The defendant is in the business of making loans and investments, among other things, and the $20,000 was to remain with him to invest at 6% interest, subject to plaintiff’s demand, on 60 days’ notice. In April, 1958, and September, 1958, plaintiff requested and received payments of $1,000 each. In October, 1958, litigation started over the family warehouse business in which plaintiff and defendant were on opposite sides. This led to plaintiff’s demand for payment of the note and her discovery of the error in the date.
Defendant refused payment. It is his claim that there was no mistake in the date of the note; that it was fully paid in cash during 1957 and that the last payment in cash was made on January 17, 1958, when he received the release; that the $2,000 given by him to the plaintiff in April and September, 1958 were *985 not payments on account but were loans. In addition to affirmatively pleading the general release, plaintiff counterclaims for $2,000. Payment is not pleaded as an affirmative defense.
There is but one question of law involved. Was there a mutual mistake of fact or a mistake by one party and fraud or inequitable conduct by the other Í If there was, plaintiff is entitled to relief (Botsford v. McLean, 45 Barb. 478; Welles v. Yates, 44 N. Y. 525; Albany City Sav. Inst. v. Burdick; 87 N. Y. 40, 47; Hall v. Prudential Ins. Co., 239 App. Div. 276, 278; Metzger v. Aetna Ins. Co., 227 N. Y. 411, 417; Brandwein v. Provident Mut. Life Ins. Co., 3 N Y 2d 491; 76 C. J. S., Reformation of Instruments, § 30 et seq.). Defendant contends that plaintiff in her testimony did not accuse defendant of fraud but only of mistake; that defendant never admitted or is there any competent proof of mistake on the part of defendant.
. If there was a mutual mistake of a material fact, such as the date on this note, in view of the date on the general release and other circumstances, plaintiff is entitled to relief (Metzger v. Aetna Ins. Co., supra; Brandwein v. Provident Mut. Life Ins. Co., supra; Welles v. Yates, supra; 76 C. J. S., op. cit.).
It is clear that plaintiff chose to accuse her brother of mistake rather than fraud, in her testimony. It is equally clear that if plaintiff’s testimony is to be believed, she made a mistake, and if defendant did not make a mistake, the irrebuttable inference is that he intended to antedate the note or was guilty of inequitable conduct. Under the circumstances this is fraud and plaintiff is entitled to relief (Welles v. Yates, supra; Metzger v. Aetna Ins. Co., supra; Brandwein v. Provident Mut. Life Ins. Co., supra; 76 C. J. S., op. cit.).
The determination is then dependent upon an appraisal of the evidence. To this end I have carefully reviewed the testimony and the exhibits. Family quarrels are always difficult to decide. Here we have not only sister against brother but sons against their mother. It is important to review the evidence for each side.
The plaintiff told a logical, straightforward story. The mother’s death, settlement of the estate, execution of a release, receipt of check and cash for part of her share and a note dated the first of the following month, February 1, 1958 for the balance of her share which was misdated February 1, 1957. The receipt of two checks, each for $1,000, in April and September, 1958, her discovery of the mistake and her demand for payment of the balance of $18,000 after other litigation had commenced between the parties. Further corroboration can be found in the testimony of Weidman who borrowed $10,000 *986 from the defendant in August, 1958. Plaintiff wanted the loan made from her money that defendant was holding and though made hy defendant, the plaintiff and her husband guaranteed it. Weidman testified that after the loan was repaid he called defendant to thank him and was told, ‘1 Why thank me, thank my sister, it’s her money.’ ’
The defendant’s story is predicated on testimony that the plaintiff and her two brothers “ settled ” their mother’s estate over three months before she died. That he, an experienced business man, and particularly one in the lending business, was willing to give the plaintiff $20,000 ($33,000 less $13,000 loans and adjustments) before their mother died, before he knew the expenses that would be incurred before death and when he thought that the credit of the man who owed $85,000 to the estate was ’ questionable, taxes credulity. I cannot and do not believe that the defendant, who maintains an office to transact a real estate, loan and investment business would give $20,000 to the plaintiff in cash without receipts, memoranda or any record in his books of account. Particularly is this unbelievable when two smaller payments of only $1,000 each are evidenced by checks. The defendant relies for corroboration on three interested witnesses. His brother Sidney, who was not present when the note was delivered but who testified that he saw $2,200 in cash, 22 $100 bills, delivered by defendant to plaintiff. Sidney makes his office with the defendant and is under his influence. He is a part of the family drama, where vengeance is sweeter than truth. However, it is not enough to pit brother against sister, this defendant has added the final thrust. His last two witnesses were the sons of the plaintiff. They came voluntarily, anxious to testify. Eobert testified that his mother asked him to guard her on October 22, 1957 when she received $3,000 in $100 bills from the defendant. He accompanied her to her home and left her. The defendant does not explain why plaintiff did not need a guard on January 17,1958, when he claims he gave her $4,470 in $100 bills with no one present.
The son Barrett testified that on June 4, 1957 and again on August 13, 1957, he told his mother, the plaintiff, he needed money. That she met him at the defendant’s office. Each time she received an envelope with 40 $100 bills and gave that sum to him as a loan. That he repaid the loan in November and December, 1957, and January, 1958, in cash. There is no corroboration for this story which plaintiff emphatically denies. No note, no receipt, no memorandum, no bank account, no attempt to show through records what was done with the money or how or where he obtained the funds to pay back the money.
*987 There is no explanation for what people will do during family feuds but these witnesses clearly showed their hatred for their stepfather and lack of love or respect for their mother as a result of her remarriage and the October, 1958, lawsuit. I cannot quote law cases but I can refer the participants to Exodus, 20:12 and 23:1.
Even as a matter of law, while the plaintiff has the ultimate burden of proof, the defendant has the burden of proving his affirmative defense and counterclaim. He also has the burden of pleading (which he failed to do) and proving payment (Lent v. New York & Mass. Ry. Co., 130 N. Y. 504, 511; Fry v. Williams, 141 Misc. 815; Conkling v. Weatherwax, 181 N. Y. 258, 263; Matter of Murphy, 5 Misc 2d 107, 109; Civ. Prac. Act, § 242).
It is ludicrous to file this decision just before Christmas, the season of good will, but a court of equity has no power to undo the hatred engendered by this entire situation. If that could be done it would be far better than any judgment. With my limited jurisdiction, however, I grant relief to the plaintiff for reformation of the note so that the date is reformed to February 1, 1958. Plaintiff may have judgment against the defendant for $18,000, with interest from January 1, 1959 and $50 costs.
Findings of fact and conclusions of law and proposed judgment to be settled on notice.