OPINION OF THE COURT
Harold Hyman, J.
This is an action brought by the plaintiff to recover moneys allegedly due to him based upon an employer’s separate pension plan and profit-sharing plan made by it for the benefit of its employees (hereinafter participants). Both plans were noncontributing as to such participants.
The nature of the single action is that there are specific moneys due to the plaintiff on both plans; but, that, result *355 ing from certain alleged activities of both plans, the trustees are charged with.dissipation, waste, diversion, negligence in the performance of their duties, and breach of fiduciary duty. Plaintiff seeks to recover, based upon the foregoing fiduciary activities, directly against the trustees.
In order to reach a determination of this matter, the court has found it necessary to divide such cause into two separate causes, one based upon the pension plan and the other based upon the profit-sharing plan. As to the pension plan, there is no novelty since it merely requires a consideration and interpretation of the terminology contained therein. As to the profit-sharing plan, there too there is no novelty, but when combining the both within the realm of fiduciary responsibility, the novelty lies in the issue of State and/or Federal jurisdiction.
The novelty is not as to the nature of the issues involved; it lies in the necessity of interpreting the meaning of the statutory language as to whether or not a participant has a right of action in a State court, or exclusively in the Federal courts. Federal statutes which make up the whole body of the Employee Retirement Income Security Program, familiarly known as ERISA (US Code, tit 29, §§ 1001-1381); more particularly the sections thereof as denominated, 1104 (fiduciary duties); 1109 (liability for breach of fiduciary duty); 1105 (liability for breach of cofiduciary), and 1132 (civil enforcement) with respect to certain subsections and subdivisions thereof, are the ones involved.
Bound by Federal statutes, this (State) court was obliged to make its determination accordingly. These determinations have been divided into the following three parts, namely: Part I — Pension Plan; Part II — Profit-Sharing Plan; Part III — Final Observations. It should be observed, that, had this (State) court the jurisdictional power to decide the main issue of fiduciary obligation, duty, activity and personal liability, the determination thereof might have resulted in different judgmental findings.
The pertinent facts and the application of State law and equity, as limited to Part I (Pension Plan) is set forth briefly therein.
*356 The pertinent facts, and the interpretation of the Federal statutory law, limited as it is to Part II (Profit-Sharing Plan) is also set forth briefly therein.
Part III (Final Observations) is an attempt to clarify how pointless the necessity of dismissing this complaint has become, solely caused by congressional pre-emption to the Federal courts. Had this (State) court the jurisdictional right and power to make a full determination on the merits, every facet thereof could have been determined now; but, under the circumstances of pre-emption, it may not now be determined, but must await other litigations in the Federal court which may run on for a period which may ultimately make the determination, as to this plaintiff, useless.
PART I — PENSION PLAN
Defendant Heiser contends, with regard to the pension plan, that: plaintiff had not reached “retirement” age of 65, and therefore he had no right to payment under the pension plan because it had not “accrued” at the time of commencement of the action and, therefore, that his action, if any, is premature; and, he further indicates that section 4 of article 7 of said pension plan provides: “Upon termination of employment of a participant for less than twenty years the percentage of his vested interest in the Trust Fund shall be computed”. He, therefore, indicates that when plaintiff terminated his employment he had a vested interest in the pension plan in the amount of $7,305.32, but not presently due and payable.
Section 5 of article 7 of the pension plan provides that the trustees shall take the same action with respect to a “participant’s vested interest” upon termination of employment as they would in the case of a participant who has retired after reaching his “normal retirement date”; and, yet, another provision (art 5, §3) provides that benefits under the plan commence at a participant’s “normal retirement date”, which, according to section 1 of article 5, is “the anniversary date of the Plan (October 31) following the participant’s sixty-fifth birthday.”
Is there, as suggested by plaintiff, any ambiguity in the verbiage of the pension plan which requires interpretation *357 in its use of the verbiage “termination of employment” as it shall apply to “vesting”? Must it be construed to mean that “vesting” occurs only after reaching one’s 65th birthday, as claimed by defendants? Or does the term mean “at any time”, whether it be a voluntary or involuntary termination even before one reaches his 65th birthday so long as there be a “termination”?
It is the opinion of the court that an examination of sections 1 and 3 of article 5 together with section 5 of article 7, above set forth, leads to the conclusion, namely, that, “termination of employment”; as it applies to “vesting”, means “at any time”. This is so because under section 5 of article 7, the trustees are directed to take the same action with regard to a participant’s vested interest “upon termination of employment” as they would be obliged to do in case such employee retired after reaching his 65th birthday, his “normal retirement date”. But the matter of “vesting!’ is not really the issue; what is the issue is when payment of such “vested” rights may, or can or should, be made by the trustees.
Since plaintiff had “terminated” his employment at the age of 61, and as a participant for seven years had credited to his account the sum of $20,872.34, section 4 of article 7 of the plan granted to him 35% of the gross amount credited, namely, $7,305.32. He therefore is entitled to commence receiving benefits under the plan, within the provision of article 5, that is, sections 1 and 3, “the anniversary date of the plan” (Oct. 31) following the participant’s 65th birthday (Nov. 2, 1980), and, therefore, commencing on October 31, 1981.
The action to recover upon such “vested” right, regardless of whether it could be brought in a State court or was pre-empted by Federal statute (ERISA) to the Federal courts, was, therefore, “premature” as to the pension plan on its face; as such “vested” right does not become effective until October 31, 1981 it must, therefore, be dismissed (Cowan v Keystone Employee Profit Sharing Plan Fund, 586 F2d 888; Reiherzer v Shannon, 581 F2d 1266; Silfen v United Whelan Corp., 30 AD2d 523; Alt v Long Is. R. R. Co., 81 Misc 2d 99, affd 54 AD2d 724) at this time.
*358 PART II — PROFIT-SHARING PLAN
Admittedly, plaintiff also has a “vested” interest in the profit-sharing plan as of October 31,1976 in the amount of $9,394.38. The profit-sharing plan expressly provides that upon a participant’s employment terminating, prior to “retirement date” the benefits may commence immediately in accordance with the manner of payment determined by the trustees.
Plaintiff terminated his employment with the employer in January, 1977. Thereafter he was advised by the trustees that, as such, they elected to pay his share ($9,394.38) in installments of $1,000 per month commencing March, 1977. In all they paid him $2,000 for the months of March and April, 1977, inclusive. There would therefore appear to be a balance unpaid of $7,394.83 under this plan to which he would normally have been entitled had other circumstances not arisen to effect not only the trustees’ ability to make payment from the moneys in the plan, but also whether any such payment can be legally paid under existent circumstances, and, even assuming that it can, to what extent? To that extent the following undenied facts are of vital importance:
On October 26, 1970, plaintiff’s employer, Cross, Austin & Ireland Lumber Company, Inc., not only established a pension plan but also a profit-sharing plan for its nonunion employees; the individual defendants became the trustees of both plans. From the inception plaintiff was a “beneficiary-participant”, although a noncontributor to either plan. The employer made contributions to both plans until its 1974-1975 fiscal year when the entire New York area suffered a severe building and financial recession. The price of lumber dropped severely; competition became decidedly greater; concerns in the lumber business for years were affected to the point where they were hard pressed to compete without selling their products at a loss. This was especially true as to those who had large inventories and accounts receivable, the latter of which became difficult, almost impossible to collect.
Therefore, in 1974 the employer sought means to relocate its plant to Athens, New York, and to concentrate more heavily on the “treating” aspect of lumber. To this *359 end the employer’s considered estimate was that by relocating thereat it would effectuate an annual cost-saving of approximately $282,000 and could profitably remain in business.
To effectuate the above plan the employer obtained loans for construction of the Athens plant; construction thereof was completed by February, 1977.
Between 1974 and May, 1977, the economic climate of the lumber business not only failed to improve, but actually deteriorated further and deeper. The employer’s gross sales fell off more and more until 1976 and finally resulted in its petitioning for bankruptcy in May, 1977.
Earlier, in December, 1974, the trustees of both plans had met and discussed loans from the plans to the employer of which it was then in dire need to carry on its operating expenses and business. At that time the funds in both plans, which had been solely contributed by the employer, had substantially accumulated to the extent that there existed, exclusive of bank interest at the rate of 5% per annum, in the pension plan, $94,269.75, and in the profit-sharing trust $102,586. The trustees’ purpose was to loan money to the employer at 10% per annum interest, but upon further proviso, that all participants in both plans were to be advised thereof and would consent thereto in writing.
On January 2, 1975 a “written authorization” regarding the loan was distributed to the plans’ participants, including plaintiff. No pressure was used by any of the trustees or by the employer upon any of the participants to sign such written authorization, nor was anyone, no less plaintiff, actually coerced to sign or from reading the same; no oral misrepresentations were made to any participant.
That plaintiff knew how to read and write was never in issue; actually as part of his job, plaintiff was obliged to know how to write and be able to read the English language, he was literate; admittedly, plaintiff was accustomed to reading business documents which, as part of his employment came before him. Admittedly, in the present instance he never asked for time to fully read the document, never received any threats, and never asked for or *360 discussed the financial conditions of his employer; but, from the very nature of his employment, he knew or had to know that the business had severely and seriously deteriorated. Whether or not he was given time to take the document home to read to his wife, the fact remains that he voluntarily did execute the authorization to loan moneys to the employer, even though, as he contends, it was based upon his “blind reliance” upon defendant Heiser, one of his employer officers who was also a trustee of both plans.
At the meeting in December, 1974 of the trustees referred to above, one of the trustees, the employer’s accountant, defendant Goetze, advised the trustees that such loans from the plans were prohibited under ERISA. Nevertheless, the majority of said trustees agreed to take the risk. Trustee Goetze never resigned as trustee, but rather actually acquiesced in the making of said loans because he received certain assurances from the other two trustees, Heiser and O’Keefe to the effect that the loans would never exceed their own participation, that is, their “combined interest” in both plans. Further, and if need be, they would relinquish such interests to protect the interests of all of the other participants.
The written authorization reads as follows: “I *** do hereby authorize the Trustees of the *** Pension and Profit Sharing Plans to loan my share thereof to Cross, Austin * * * at an interest rate of 10% per annum to meet its operating needs.”
As of the end of December, 1974, the time when the above authorization was executed, the financial condition of both plans was as afore-stated.
The loans from the profit-sharing trust were made, $40,000 on January 16, 1975 and $70,000 on May 6, 1975. Plaintiff’s share in said profit-sharing trust, to which contributions were made solely by the employer up to and including October 31, 1974 therefor never changed from the time of the written authorization and the making of the loans. The records indicate that the employer repaid the first $40,000 loan made from the profit-sharing plan with the interest thereon (10%), before making a second loan, on which latter, it, employer, paid interest at the 10% per *361 annum rate from May 6,1975 to January 12,1976, for said period of eight months the sum of $12,709.56, instead what was due of approximately $5,700, or, an excess of approximately $7,000.
Whether the plaintiff’s written consent is viable and constitutes an estoppel (Pimpinello v Swift & Co., 253 NY 159; Metzger v Aetna Ins. Co., 227 NY 411) need not be considered herein if it be determined that a State court’s jurisdiction has been pre-empted by act of the United States Congress to the Federal District Courts.
Assuming, but not presently so determining, that the plaintiff’s share in the profit-sharing plan may be ascertainable, should it be presently deemed “obtainable” by means of this present action in which “all participants have not been made parties”? Would it be equitable to have plaintiff receive his “so-called (assumed) monetary share”, which, if paid from said plan or trust fund, might diminish or exclude the rights of other participants? This court is of the opinion that such payment to plaintiff alone, which might be detrimental to others under the present circumstances, would not be either fair or equitable.
True, the employer is in bankruptcy. True, since filing its petition in bankruptcy it has not made any contributions to said plan. But, it is further true that due to the fact that the trustee in bankruptcy has pre-empted the funds in the trust accounts of both the pension and profit-sharing plans (properly or improperly, we do not herewith determine), there has as yet never been an “accounting”, “closing of the plan” nor any “balance thereof ascertained” for distribution purposes. What is more, the trustee in bankruptcy has refused to release such trust funds to allow for an accounting, ascertainment, closing of, by distribution of either plan.
Therefore, even assuming jurisdiction by this court (US Code, tit 29, § 1132, subd [e], par [1]), of which it may have further been pre-empted because of the employer’s bankruptcy (Marshal v Chase Manhattan Bank [National Assn.], 558 F2d 680), nevertheless this action by plaintiff “to recover a specific, so-called definitely ascertained amount”, his claimed “share”, is likewise premature and *362 improper since all interested persons are not now before the court. Since, therefore, this court is presently unable to protect “all interests and all rights” (Husted v Thomson, 158 NY 328), and since to allow recovery herein to plaintiff alone might result in inequities and detriment to others equally entitled, this court will not so act as plaintiff requests, but, on the other hand must dismiss the complaint with regard to such cause of action because of the insufficiency of necessary parties (CPLR 1001, subd [a]; 3211, subd [a], par 10) without prejudice to bringing any other action or proceeding as he may be advised within the purview of ERISA and with all necessary parties before that court either as parties plaintiff or parties defendant.
PART III — FINAL OBSERVATIONS
Furthermore, such dismissals are not to be construed to mean that an action by plaintiff against the trustees for alleged breach of their fiduciary duty may jurisdictionally be brought in a State court, even if it be a viable one or in compliance with CPLR 1001 (subd [a]) and 3211 (subd [a], par 10).
The statutory pre-emption by the Congress of the United States to the Federal courts is provided for in the Employment Retirement Income Security Program (ERISA) (US Code, tit 29, § 1132, subd [e], par [1]): it provides as follows: “Except for actions under subsection (a) (1) (B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by *** a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a) (1) (B) of this section.” Section 1132 (subd [a], par [1], cl [B]) of title 29 of the United States Code referred to above, provides:
“(a) A civil action may be brought —
“(1) by a participant or beneficiary —
* * *
“(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan”. (Emphasis supplied.)
*363 Clearly, once the amount due to plaintiff is determined following an accounting which so ascertains same, and if the balance on hand in the plan is found to be sufficient to pay “all participants in full”, or when insufficient in amount it be legally ascertained by apportionment, plaintiff would have the right to proceed in this State court. Likewise an action for a declaration of his rights to future benefits under the terms of the plan (declaratory judgment) might also be brought in this court. But, the right to bring suit “to enforce his rights under the terms of the Plan” does not, in the opinion of this court, make available to him this State court for suit against a trustee based upon the claim of fiduciary responsibility resulting from an improper discharge of such trustee’s duty or that of his cofiduciary as provided for in ERISA (US Code, tit 29, §§ 1104-1108). Even if it be a viable action, it nevertheless would not be available to plaintiff for direct payment to him, rather the liability of the fiduciary is provided for to be “to such plan [for] any losses to the plan resulting from each such breach” (US Code, tit 29, § 1109, subd [a]; emphasis supplied). The plaintiff might indirectly be a recipient by the fiduciary making the plan whole, but only after this be done, and after it results in an accounting, determination of amount due to him and its then availability may he then bring suit “to enforce his rights under the plan”. This does not mean he may not sue in the courts of the United States to cause a fiduciary to account for prohibited activity and to repay any loss to the plan. It does mean that his rights against a fiduciary trustee are clearly defined to be primarily for the purposes of the plan being made whole, and himself secondarily. Once successful in the Federal court, he may then turn to the State court for his own ultimate right of recovery or he may proceed in the Federal court.
Under the circumstances as presently existent with regard to the plans, the complaint as a whole is dismissed, without prejudice as afore-stated, and judgment is rendered in favor of the defendants against plaintiff. No costs or disbursements are allowed in view of the fact that the court determines herewith that to allow such herein would not be equitable under all of the circumstances involved in *364 this action (CPLR 8101). All cross claims are similarly dismissed, without prejudice and without costs or disbursements.